SARAH EPSTEIN, EXECUTRIX OF THE ESTATE OF SAUL EPSTEIN, DECEASED, PLAINTIFF–RESPONDENT, v. NATIONAL CASUALTY COMPANY, A CORPORATION, DEFENDANT–APPELLANT.

Argued January 31, 1949—Decided February 21, 1949.

410

412

Mr. *Joseph Kraemer* argued the cause for plaintiff-respondent.

Mr. *Nicholas Conover English* argued the cause for defendant-appellant (*Messrs. McCarter, English & Studer,* attorneys).

The opinion of the court was delivered by

CASE, J. National Casualty Company, defendant below, appeals from a judgment entered in the former Supreme Court upon a directed verdict for the plaintiff at the Essex Circuit. The suit was to recover for disability from disease under an indemnity policy covering plaintiff's decedent.

██ Appellant's first point is that the evidence upon whether the insured's illness was contracted and began after the policy had been in continuous force for ten days after its date was such that plaintiff's motion for a directed verdict should have been denied and defendant's motion for a directed verdict should have been granted. The point is predicated upon a policy provision hereinafter set forth and arises out of defendant's eighth and tenth defenses, made parts of the amended answer. Plaintiff argues that upon the principle of *res judicata* defendant is estopped by the dismissal of a bill in Chancery wherein the latter sought to rescind the policy on the ground of fraud. The answer in the present lawsuit originally contained twenty-two defenses, of which the eighteenth, nineteenth, twentieth, twenty-first and twenty-second alleged fraudulent representations in the application. The enumerated defenses were, on plaintiff's motion, struck as *res judicata* by reason of the Chancery decision. Those defenses then passed out of the case as did also the charge of *res judicata.* The attack upon the defenses presently under discussion is now made for the first time and must, of course, fall for that reason. In addition, there

is not identity in the subject matter or the issues. The Chancery suit grounded in fraud; the present action grounds in a contractual provision upon which, it is alleged, the right of action depends. It appears from the proofs that the rather unusual disease from which the insured suffered might even have been present without his knowledge. The absence of fraud does not entitle plaintiff to prevail if the factual structure of the case does not come within the policy coverage.

█ The policy was dated September 28, 1942, and provided that it should cover only "illness that is contracted and begins after this policy shall have been maintained in continuous force for ten days from its date." The testimony of Dr. Gorten was that in his opinion, based upon a physical examination made in March, 1943, the insured had been suffering from the disabling ailment since March, 1942. On the other hand there was proof that the illness began within the policy period. The fact as to when the illness began was for the jury and not for determination by the court.

██ It is next said that the notice of sickness was not seasonably given and that, therefore, plaintiff's motion for a directed verdict should have been denied and defendant's motion for a directed verdict should have been granted. The policy provisions were:

"4. Written notice * * * of sickness on which claim may be based must be given to the Company * * * within ten days after the commencement of disability from such sickness.

"5. * * * Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

There was evidence from which, with the inferences of fact legitimately to be drawn therefrom, the jury could have found:

The policy was written September 28, 1942. In December of 1942 Epstein injured his thumb with his car door. He was attended by his family physician, Dr. Michael J. Kaufman, who was dead at the time of the trial. The doctor put the finger in a splint and later bandaged it. Epstein reported the injury to the company and was paid $75 for the resulting disability. In March, 1943, Dr. Kaufman, upon removing the bandage,

observed a condition which was not then diagnosed but which caused him to advise Epstein to go to Dr. Manfred L. Gorten, a specialist in neurology and psychiatry and also to go to a hospital for a check up. Epstein complied. He went to and was examined by Dr. Gorten on March 16, 1943. He was at the Beth Israel Hospital from March 22 to March 27, 1943, and while there he received professional care from Dr. Gorten. Dr. Gorten's diagnosis was that the patient was suffering from amyotrophic lateral sclerosis with bulbar paresis. There is nothing to indicate that Dr. Gorten communicated the diagnosis to Epstein. The inference is that he did not, for his testimony is that he reported his opinion about the case to Dr. Kaufman and to no one else. Epstein did not feel well; he remained mostly about his home or garden. On April 29, 1943, and again on May 18, 1943, at the suggestion of his doctor, he called upon and was examined by Dr. Charles Englander, a pathologist, who, also, diagnosed the disorder as amyotrophic lateral sclerosis but did not so inform Epstein. The doctor permitted the patient to believe that he was suffering from a nervous disorder but sent the correct diagnosis to the referring physician. At that time Epstein had some weakness and clumsiness of his hands and atrophy of the small muscles of his hands and some small twitchings as well as reflex changes, but he could walk back and forth and up and down stairs with no apparent irregularity in his gait. He looked relatively well. His blood pressure, heart, lungs, speech, eyebrows and pupils were normal. The was nothing in his condition to prevent him from talking to people in his customary pursuit of selling merchandise. He did not entirely discontinue his attendance at his place of business until some time in May. Toward the end of that month he fell and cut his forehead, requiring some surgical stitching. His daughter, disturbed by the fact of the fall, went to Dr. Kaufman and asked if there was a medical explanation. She was then told that her father was suffering from the disease mentioned above. So far as appears, that was the first time the information was passed except from one physician to another. The daughter forthwith procured a company form which was sent by the company agent, Mattes Lerner, to Epstein's place of

business and was forwarded from there to the daughter. The latter attended to the filling in of the form, including the physician's questionnaire, which was dated May 29th, 1943, and was sent to the company early in June. The form so provided by the company as the form required by the pertinent policy provision was entitled as to the first sheet "Claimant's Preliminary Notice of Sickness" and as to the second sheet "Physician's Preliminary Report of Sickness". The illness was a degenerative disease of slow onset and gradual development. Usually the patient does not know for quite a while what is wrong with him; he becomes aware of weakness, stiffness and other disabilities but does not know what is the matter with him. He may even have the disease without knowing that he is sick. Epstein died November 4, 1944.

Under the view of the evidence outlined above we conclude that the defendant was not entitled to prevail on its motion for a directed verdict upon the ground that notice of sickness was not given in accordance with the policy provision. A verdict should never be directed for one party unless the evidence is such that no view the jury may lawfully take of it favorable to the other party can be sustained. *Sardino v. Agnellino,* 119 *N. J. L. 7 (E. & A.* 1937). Under the same proofs, and other proofs which it is not necessary to recite, the plaintiff, also, was not entitled to have the issue determined in her favor as a matter of law.

The third point presented by the appellant is that the trial court committed error in excluding from evidence the testimony of Dr. Gorten as to the history he had obtained from the insured. It is well settled that the declarations of a patient as to his symptoms made to his physician or surgeon for the purpose of treatment are admissible in evidence. When those declarations are made, not for the purpose of treatment, but for the purpose of leading the physician or surgeon to form an opinion to which he may testify as a witness for the declarant, the better rule is that the declarations made under such circumstances are not competent evidence on behalf of the declarant. *Consolidated Traction Co. v. Lambertson,* 60 *N. J. L.* 452 *(E. & A.* 1897). *But* when a physician who has

examined the patient is called by the adverse party, the fact that he is called as an expert witness does not disqualify him from testifying, as any other witness at the instance of that adverse party might testify, to a relevant statement made by the patient at the time of the examination. *Sandford v. The Chanas Co.,* 117 *N. J. L.* 485 *(E. & A.* 1936).

In the instant case the insured did not consult Dr. Gorten for the purpose of qualifying him as a medical expert. The consultation and examination at the doctor's office were for the purpose of diagnosing the patient's illness to the end that intelligent treatment might be administered. In view of the nature and purpose of that examination, and of the professional care rendered by the doctor to Epstein during the latter's hospitalization, we think that Dr. Gorten should have been accorded, with respect to giving testimony, the position of a treating physician. The court seems to have entertained the erroneous view that a physician who has been consulted by a patient for the purpose of consultation or treatment may not, properly, testify for the adverse party, and perhaps because of that view the court was led to adopt a somewhat hostile attitude toward the witness and in effect to invite from the plaintiff the motion for a direction of verdict in plaintiff's favor. We conclude that the ruling against the admission was error.

Appellant's final point is that the copy of Dr. Gorten's report to Dr. Kaufman should have been admitted in evidence. The argument advanced in support is that the attitude of the trial judge towards the witness had suggested a want of integrity and reliability, that the report, made of course before that circumstance had arisen, supported the truthfulness of the witness's testimony and that, under *State v. Neiman,* 123 *N. J. L.* 341 *(Sup. Ct.* 1939), affirmed on opinion below *(E. & A.* 1940), the offered exhibit should have been admitted. We think that the incident had not developed into an attack on the witness's credibility and that the ruling was within judicial discretion.

The judgment below is reversed for the reasons stated in the discussion of appellant's points, one, two and three. The cause will be remanded for a new trial.

Justice HEHER concurred in the result.

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—7.

*For affirmance:* None.