61 N.J. Super. 302 (1960)
160 A.2d 655
JAMES DI DONNA, AN INFANT, BY HIS GUARDIANS AD LITEM, DOMINICK DI DONNA AND NANCY DI DONNA, AND DOMINICK AND NANCY DI DONNA, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
JOSEPH ZIGARELLI, M.D., ABBOTT LABORATORIES, A BODY CORPORATE OF THE STATE OF ILLINOIS, AND ELI LILLY & CO., A BODY CORPORATE OF THE STATE OF INDIANA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 1960.
Decided May 4, 1960.
*303 Before Judges PRICE, SULLIVAN and FOLEY.
*304 Mr. Albert L. Cohn argued the cause for plaintiffs-appellants (Messrs. David & Albert L. Cohn, attorneys; Mr. Daniel Crystal, on the brief).
Mr. Kevin M. O'Halloran argued the cause for defendant-respondent Joseph Zigarelli, M.D. (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Kevin M. O'Halloran, on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiffs, in a malpractice suit, seek to reverse an interlocutory order entered in the Superior Court, Law Division, pursuant to R.R. 4:18-2, granting the application of defendant Joseph Zigarelli, a physician specializing in neurology and psychiatry, to take the deposition in New York of plaintiffs' prospective medical witness. We heretofore granted leave to appeal.
In the case at bar damages are sought for permanent injuries to the infant plaintiff, allegedly caused by the defendant doctor's negligent diagnosis and treatment of him. The parents of the minor sued per quod.
Respondent defends the order on the ground that, as evidenced by plaintiffs' answers to interrogatories, the prospective witness was one of the physicians who treated the minor plaintiff following his alleged negligent treatment by defendant doctor, to whose professional care the minor had earlier been entrusted; that the witness, in his capacity as a treating physician, is subject to interrogation under the discovery proceedings; that his records, referable to such treatment, are the proper subject of required production at the taking of his deposition; that, as expressed in defendant's brief, such records and writings, prepared by the prospective witness "while treating the infant plaintiff," were prepared "in his capacity as a treating physician," and "not as an `agent in anticipation of litigation and in preparation for trial'"; that, therefore, such records are not those barred by R.R. 4:16-2 as material prepared by a party or his agent in anticipation of litigation and in *305 preparation for trial, or writings which reflect the conclusions of an expert, prohibited by that portion of R.R. 4:16-2 "commonly referred to as the `work product' rule."
Plaintiffs' counsel recognizes that their doctor, by virtue of his status as a treating physician, is not, as a prospective witness, to be cast solely in the role of an expert, and therefore normally might be interrogated on deposition within limited factual areas with reference to his activity as a treating physician. However, as hereinafter noted, he not only challenges the order in its entirety but attacks it specifically because its unlimited terms, he asserts, allow defendant to inquire into matters beyond the scope of permissive discovery. The avenues of inquiry, which plaintiffs aver are wrongfully opened to defendant by the breadth of the challenged order, are those which, directly or indirectly, involve the witness' expert opinion.
Preliminarily we refer to the factual situation which resulted in the present controversy. The complaint herein, filed February 5, 1959, charged that the minor plaintiff suffered permanent injury as the direct result of defendant doctor's negligence in the diagnosis of plaintiff's condition and in the subsequent treatment accorded to him. The charge of negligence was denied and, in addition, defendant alleged that the child's "injuries * * * were due to the failure * * * of his parents to follow the defendant's specific instructions and directions" concerning its treatment.
The pretrial order, entered November 23, 1959, contained a provision that "all parties shall have until January 25, 1960 to complete discovery proceedings." Defendant's counsel, within said period, made application to the court for an order:
"* * * allowing the defendant to take the depositions on oral examination of Dr. Donald Grivetz at his offices at 1176 Fifth Avenue, New York, New York after first making application to the appropriate Court in the State of New York for an issuance of a Subpoena Duces Tecum compelling his attendance and on twenty-four *306 hour notice to the plaintiffs and other parties of interest of the time and date of the said depositions and on such other terms as the Court shall feel just on the grounds that the plaintiff intends to use said witness in the course of this litigation."
On December 23, 1959, over plaintiffs' opposition, the court ordered:
"* * * that the defendant, Joseph Zigarelli, M.D., be permitted to take the oral deposition of Dr. Donald Grivetz at his offices at 1176 Fifth Avenue, New York, New York, after first making application to the appropriate Court in the State of New York for an issuance of a Subpoena Duces Tecum compelling his attendance and his records relating to James Di Donna on forty-eight hour notice to the plaintiffs and other parties in interest of the time and date of the said deposition."
The record before us discloses that the issue before the trial court, on the argument of the motion for the aforesaid order, was whether defendant was entitled to any examination of the witness under the discovery procedure. The record is silent as to any attempt by plaintiffs to limit the scope of the examination.
We shall hereinafter consider the principal basis upon which plaintiffs rest their attack on the aforesaid order but, initially, we turn our attention to collateral reasons which they urge for its reversal. Plaintiffs are critical of the timing of the defendant's application for the taking of the deposition. The proofs show that on June 29, 1959 by answers to interrogatories they notified defendant that one of the treating physicians was the New York doctor in question; that at the time of the pretrial conference no mention was made of defendant's intention to proceed with an "out-of-state deposition" and, as stated in their brief, plaintiffs were of the belief that "such extension of time to complete discovery was granted only to complete depositions of both parties themselves * * *." They stress that portion of R.R. 4:29, which, with respect to permitting discovery proceedings after the pretrial conference, states that such "leave at this stage is undesirable and should be *307 granted only in the most exceptional cases." In support they also cite Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 374 (1954). They contend that, as six months prior to the conference defendant knew of plaintiffs' intention to call the doctor as a witness, defendant, in the absence of a showing of "good cause," should not now be permitted to take the deposition in question. They express concern over the possibility of delay of the trial of the instant case if "either the doctor or the defendant takes an appeal from an adverse ruling of the New York Court in granting or denying the issuance of a subpoena." They concede, however, that they did not ask the trial court for any restriction or limitation with reference to the type or extent of the discovery procedure which the pretrial order, as aforesaid, directed might be pursued by both parties "until January 25, 1960." The pretrial conference was the appropriate occasion for them to seek to limit or restrict the discovery procedure if they believed that there was just ground for doing so. Instead they consented, without qualification, to the pretrial order provision. They recognize that the permission to enlarge the time for the pretrial discovery was within the trial court's discretion. There was no abuse of that discretion and the subsequent order for the taking of the New York doctor's deposition, applied for and granted within the time limitation of the pretrial direction, was, both as to its timing and nature, within the pretrial order terms.
Nor are we in accord with plaintiffs' contention that the court erred in basing the order for the deposition of the medical witness on the fact, contained in the notice and repeated by way of recital in the resultant order, that the "plaintiff intends to use said witness in the course of this litigation." They assert in their brief that, as the defendant's application was not based on the ground that the prospective witness "had knowledge of relevant facts, but instead on the ground that he would be used at trial," defendant's "real purpose in seeking such depositions is not legitimate discovery, but rather harassment * * *." In *308 support of this contention plaintiffs cite Carbone v. Warburton, 22 N.J. Super. 5, 13 (App. Div. 1952), affirmed 11 N.J. 418 (1953), in which the court recognized the "reluctance of the members of the medical profession to testify" for a plaintiff in a medical malpractice action. Stressing the fact that the "plaintiffs have been most fortunate in obtaining the agreement" of the New York doctor to testify for them as an expert against another doctor, plaintiffs in the instant case assert that the challenged order impels the conclusion that the doctor "will be subjected to endless delay, expense, and oppression unless the order is set aside." They contend that one of defendant's motives in seeking the deposition is "to harass" the witness. They add, in their brief, that the taking of his deposition "because he may be used at trial" becomes "a weapon used to discourage" him "from testifying as an expert at trial." There is no just ground for this conclusion in the record before us and the criticism of the aforesaid recital basis for the order is unjustified.
We next direct our attention to plaintiffs' principal criticism of the order, i.e., that it violates "the clear terms of R.R. 4:16-2 which expressly bars inquiry into the conclusions of an expert, except as provided in R.R. 4:25-2," which latter rule concededly is not here applicable. In this connection they urge that: (a) the order is so broad that it permits defendant to extend his inquiry into an area beyond the scope of legitimate discovery, viz., through the medium of interrogation, to probe the conclusions, findings and opinions of the expert retained by plaintiffs; (b) furthermore, that the order is "so broad" as to require the witness "to produce or submit for inspection writings prepared by him to aid in testifying in the pending litigation"; (c) defendant may not, by deposition, obtain a medical report as to the minor plaintiff's condition as "there has been no `request and delivery' by plaintiffs for the findings and conclusions of any doctor who examined the infant plaintiff at the request of the defendant," as provided in R.R. 4:25-2; *309 (d) R.R. 4:16-2 "cannot be nullified" by "seeking arbitrarily to classify the witness as a lay witness, and then proceeding to subject him to depositions at will on the basis of the unlimited and far reaching order" issued by the trial court; and (e) if the depositions are permitted, the order therefor must be restricted to provide that no inquiry may be made: (1) into any conclusion "requiring the expert opinion and judgment" of the witness; (2) into any "matter requiring the conclusion of an expert based upon a hypothetical question"; (3) into "matters encompassing the written report, evaluation, findings, diagnosis, prognosis or judgment of a medical nature"; and (4) into any matter requiring the disclosure of "a prior or past conclusion, diagnosis * * * or opinion" of the witness or "requiring the disclosure of any information, facts, history * * *" which the witness acquired "by reason of his having been retained by the plaintiffs in this action as an expert witness for the plaintiffs."
In support of the criticized order, defendant preliminarily observes that under R.R. 4:16-1 any party may take the testimony of any person "by deposition on oral examination without leave of Court." He notes that the necessity of securing a court order to take the testimony of the witness in the case at bar stemmed solely from the fact that the witness resides outside of the State of New Jersey and is therefore not subject to a subpoena issued in this State. He desires to present an exemplified copy of the order to the appropriate court in New York and there secure an order for the issuance of a subpoena to compel the attendance of the witness in question and the production of his relevant records.
Defendant bases the justification for the order under scrutiny on the fact that the prospective witness is a physician who actually observed and treated the minor plaintiff for an extended period. The record before us reveals that, in response to an interrogatory which required plaintiffs to reveal the names and addresses of doctors who treated the *310 minor plaintiff and the dates and places where such treatments were received, plaintiffs furnished, among others, the name of the doctor in question and, in their answer as far as he was concerned, stated that he "saw the plaintiff on August 13, 1958 at Barnet Memorial Hospital" and that the adult plaintiffs "believe" that the doctor "saw" their son "each day between August 13, 1958 and December 2, 1958 at Mt. Sinai Hospital, 5th Avenue and 100 Street in New York City." Defendant contends that, as the doctor was one of the minor's treating physicians he is not immune from the discovery procedure, to the extent of interrogation on any phase of his activity as a treating physician.
Defendant has voluntarily limited the scope of the deposition of the medical witness. His specific statement, relating thereto, is expressed in his brief as follows:
"Defendant agrees that Dr. Grivetz cannot be required to produce or submit for inspection any part of a writing which reflects his conclusions as an expert witness engaged by the plaintiffs. Since this is a malpractice action wherein the standard of care and any deviation therefrom must be established by expert testimony, this defendant would not be permitted under R.R. 4:16-2 and Hull v. Plume, 131 N.J.L. 511 (E. & A. 1944), as well as Stanton v. Rushmore, 112 N.J.L. 115 (E. & A. 1934), to inquire into the present medical opinion of Dr. Grivetz as to the standard of care which was required of this defendant and whether or not this defendant deviated from that standard. In other words, this defendant recognizes that he cannot seek, either by hypothetical question or otherwise, the conclusions formulated by Dr. Grivetz in preparation for trial in his capacity as an expert witness retained by the plaintiffs."
However, in opposing plaintiffs' contention, defendant asserts that he does have the right on the taking of the deposition to inquire what the doctor "actually did and observed at the time he was treating the infant plaintiff, and also his findings and the diagnoses he formed at that time." He asserts that the doctor, "as a treating physician, is a fact witness"; that his initial relationship to the matter was that the minor plaintiff was his patient; that "he was later retained by plaintiffs' attorneys as an expert witness *311 in anticipation of trial"; and that his subsequent retention as an expert cannot immunize him from interrogation under the discovery procedure. He takes cognizance of plaintiffs' criticism of the scope of the order under which they, as above noted, contend that defendant would be permitted to "inquire into the conclusions, findings, and opinions of an expert" retained by plaintiffs. He emphasizes that, as stated in plaintiffs' brief, the "defendant is charged, inter alia, with having been negligent in his diagnosis, or treatment, or both of the infant plaintiff, with the result that the child has become an incurable invalid and will be bedridden for the remainder of his life." Because of this specific and grave allegation defendant urges that he "is entitled to know exactly the nature of the malady with which the infant plaintiff alleges he is afflicted so that he [defendant] can properly prepare his defense." Defendant poses the inquiry as to "who can better supply" that information than the physician in question.
Citing Epstein v. National Casualty Company, 1 N.J. 409, 416 (1949), defendant emphasizes in his brief that the New York doctor was first consulted as a treating physician, that, as such, "he could be called by the defendant at trial to testify as to any statements made to him by the plaintiffs or any observations which he made, and if he can so testify at trial he can be called by the defendant to so testify at a deposition prior to trial."
There can be no doubt that in this case defendant is entitled to inquire of the physician, who treated the minor plaintiff subsequent to the time that he was under defendant's care, as to the dates and places of his treatment, his observations, results of tests conducted and relevant statements or admissions made by the adult plaintiffs, as well as the "history" which he may have received from the parents of the infant. Also, specifically limiting our ruling to the situation existing in the case at bar, we hold that the defendant herein is entitled by deposition to inquire into the findings and diagnoses made and the opinion of the treating *312 physician and to require the production of records incident to his activity as a treating physician.
Plaintiffs rely heavily on the case of Kusner v. Howard S. Stainton Co., 59 N.J. Super. 93 (Law Div. 1960). The case is not applicable. The expert there considered did not have a dual capacity as does the physician whose deposition is sought in the case at bar.
We are not in accord with plaintiffs' further contention that the order of the trial court is improper because it permits defendant to obtain a medical report as to the infant plaintiff's condition in a manner not provided in R.R. 4:25-2. That rule refers to the exchange of reports of examinations made in preparation for trial by defendant's and plaintiff's physicians and is unrelated to the question at issue before us.
We affirm the order of the trial court. The defendant will confine the scope of his inquiry within the limits which, as above noted, he, himself, has imposed.
Affirmed; no costs.