STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. SAMUEL SHIREN, DEFENDANT-RESPONDENT.

Argued April 28, 1952—Decided May 19, 1952.

446

447

*Mr. Paul T. Huckin,* Deputy Attorney-General of New Jersey, argued the cause for the appellant (*Mr. Harry L. Towe,* Deputy Attorney-General of New Jersey, Acting Prosecutor of Bergen County, attorney).

*Mr. George F. Losche* argued the cause for respondent.

The opinion of the court was delivered by

BURLING, J. The defendant Samuel Shiren after a jury trial in the Bergen County Court was on February 15, 1951, adjudged guilty of assault and battery and causing death by driving a motor vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others. He appealed to the Superior Court, Appellate Division, which on October 1, 1951, reversed the judgments of conviction, *State v. Shiren*, 15 *N. J. Super.* 440 (*App. Div.* 1951). The State then petitioned this court for certification, which was allowed. *State v. Shiren*, 8 *N. J.* 414 (1952).

The incident from which this criminal action stems occurred at about 1:30 P. M. on June 24, 1950, on State Highway Route 4, a dual highway at the locale in the Borough of Englewood. Three teen-age boys had been riding bicycles along the highway. On reaching that point thereon where Route 4 runs under what is known as the Jones Road Overpass, they parked their vehicles at the extreme right edge of the road, dismounted and proceeded to a point in the shade (it was an extremely hot day) a few feet from the roadway, with the purpose of resting and cooling themselves. A short time later, the defendant's automobile swerved from the "fast" (passing) lane across the "slow" (driving) lane and jumped the curb, striking the bicycles and two of the boys. One of the boys was thrown under defendant's car. He died later that afternoon. The second boy was injured and thrown back onto the highway, coming to rest in the middle of the east bound lane.

After his subsequent indictment, the defendant was tried before a jury, in the Bergen County Court, was adjudged guilty as above noted and was sentenced to the New Jersey State Penitentiary for a term of two to three years. The State's case against the defendant was presented upon the premise that defendant was driving the automobile while intoxicated. This was the theory upon which the case was tried and submitted to the jury. The defense was that the cause of this unusual conduct, not consistent with the opera-

tion of an automobile in the exercise of due care, was a sudden physical attack, not due to the use of intoxicating liquor, which deprived the defendant of control over the operation of the automobile. Examples of conflict in the evidence on the question whether the defendant was intoxicated are as follows: Defendant testified that he was not intoxicated, and the details of his testimony in this respect were partially corroborated by Chapo, a subordinate employee who was with him earlier in the day of the accident. Of the witnesses for the State, Rosenkranz, a civilian passerby, testified that at the time of the accident defendant was drunk, "didn't know what he was doing" but an hour later "he didn't look so drunk any more"; Fitzgerald, also a civilian passerby, and his wife, testified that defendant was intoxicated at the time of the accident, although Mrs. Fitzgerald "wasn't too sure"; Bellingham, one of the investigating police officers of Englewood testified defendant was drunk, basing his conclusions on defendant's "staggering" and "indifferent attitude"; DuBos, another police officer, testified that defendant was intoxicated, so concluding from defendant's "odor and the manner of walking"; Miller, a police officer, corroborated this testimony; Abrams, Chief of Police of Englewood, "couldn't say whether he was drunk or sober"; Jack Kelly, the boy who was not hit by the car, testified that defendant was drunk; Dr. Eisenstein, who gave the defendant the sobriety tests at the police station, testified that he found defendant sober and that there was no doubt as to this. Dr. Mueller, a State's witness, expert on alcoholism and also a passerby at the scene of the accident (and who administered temporary aid to the injured boys) testified he "thought" defendant was under the influence of alcohol to some degree but that a disorder of circulation to the brain could simulate symptoms of alcoholism. He further testified that he meant only that defendant "had taken some alcohol" and that having an alcoholic breath does not indicate a man is unable to drive.

The defendant appealed the judgments of conviction to the Superior Court, Appellate Division, which reversed the judgments for the reason that certain medical testimony asserted to be relevant to the defendant's condition at the time of the accident had been improperly excluded by the trial court on the ground of remoteness. The State as hereinbefore noted petitioned for certification which was allowed by this court.

The questions involved presented by the parties to this appeal related to whether the trial court abused its discretion in excluding expert medical testimony, whether the trial court erred in admitting opinions of lay witnesses as to alleged intoxication of the defendant and whether the verdict of the jury was against the weight of the evidence. Appellate review in this case in the Superior Court, Appellate Division, was subject to and in this court is controlled by *Rule* 1:2–19(a), as amended June 7, 1951. The applicable portion of the rule provides that error in the admission or rejection of testimony "shall be cause for reversal if specific objection thereto was made and it appears from the entire record of the proceedings had upon the trial that the defendant thereby suffered manifest wrong or injury."

 It is obvious that proof of the physical condition of the defendant at the time of the event was vital to his defence. The objective of laying the groundwork for expression of an ultimate opinion of the condition of the defendant in relation to the control of operation of the automobile by him at the time of the event was the right of the defendant. The weight to be accorded the professional opinion was for the jury.

The principal question involved is that of the trial court's exclusion of expert medical testimony, including for the most part information sought to be elicited by defendant from Dr. Abraham S. Effron, a physician specializing in neurology and psychiatry and, as to the remainder, questions addressed to Dr. Bernard Eisenstein, the police department examining physician. The action of the court must be scru-

tinized, although the generality of presentation of the points evinced in this category makes the task one of difficulty.

Dr. Effron was called as a witness by the defendant in order to substantiate defendant's assertion that he had "blacked out" just before reaching that portion of the highway adjacent to the area where the boys stood, and did not recover his senses until after the event. Dr. Effron testified that he initially examined the defendant on October 20, 1950, and again examined him on November 4, 1950. The State objected to all questions asked of the doctor relative to the results of these examinations and the doctor's opinion as to defendant's condition on June 24, 1950, principally on the ground of remoteness. This ground was found sufficient by the trial court and the objections were sustained. The Superior Court, Appellate Division, held that this was erroneous and affected defendant's substantial rights.

██ It is a well recognized principle that evidence which is otherwise competent may relate to facts too remote in point of time to be admissible. That the trial court is vested with discretion in ruling upon remoteness, and that this action is not a ground for reversal absent abuse of discretion is settled in this jurisdiction. *State v. Tansimore*, 3 *N. J.* 516, 530 (1950). In the present case, therefore, we point our examination of the record to a determination whether the action of the trial court constituted an abuse of discretion causing manifest wrong to the defendant.

██ It is settled that the exercise of discretion implies conscientious judgment, not arbitrary action, and takes account of the law and particular circumstances of the case, being directed by the reason and conscience of the judge to a just result. Essentially it is the manifest denial of justice to a party that constitutes abuse of judicial discretion and such is the import of *Rule* 1:2–19(a) as amended, *supra*.

It appears that most of the testimony of Dr. Effron which was excluded, was excluded solely on the ground of remoteness. This is further evident from the charge to the jury. After testifying that he examined the defendant on October

20, 1950, and November 4, 1950, Dr. Effron was prevented from testifying as to an encephalogram of the defendant which he took or supervised, on the ground of remoteness; as to defendant's blood pressure on the ground of remoteness; as to tumor or kidney damage on the same ground; as to results of neurological examination on the same ground, as to defendant's medical history, same ground. He was also prevented from testifying as to whether an encephalogram would show the occurrence of a cerebral anemia, and as to results in this respect of his examination of defendant.

The defendant's asserted foundation for the excluded testimony of Dr. Effron in the evidence adduced consisted of the following: defendant testified that on the day in question he had had a severe toothache and had been ill, so ill that he had left his job early to go home; that at the time of the accident he "blacked out completely"; that he had had high blood pressure since January, 1950, and was treated by a doctor for high blood pressure; that he was "still having high blood pressure." He testified that he had been treated for this condition by a Dr. Mufson and Dr. Effron. He testified he went to Dr. Mufson four days to a week after the accident, explained what had happened and was examined in connection with blackouts and high blood pressure.

All the questions addressed to Dr. Effron at the trial, except those relating to cerebral anemia, were interposed and were excluded prior to introduction of evidence of medical history subsequently offered when it was disclosed that the defendant had been attended by Dr. Effron for purposes of treatment. The questions propounded to Dr. Effron were therefore founded upon basic factors not in evidence at the time. The first material questions were endeavors to elicit what Dr. Effron's conclusions were as a result of an electro-encephalogram and the medical history of defendant, neither of which had been introduced in evidence; next, Dr. Effron was asked about defendant's blood pressure; next, testimony as to whether defendant, at the time of Dr. Effron's examination, was suffering from any tumor or kidney damage was

excluded. Dr. Effron was then asked for the results of his neurological examination of defendant. A hypothetical question related to blood pressure was excluded for the reason that it contained elements not in proof. Up to this point no error occurred in the actions of the court due to the order of proof.

After a short recess, Dr. Effron later was recalled to the stand and testified that his examinations of defendant had been for the purpose of treatment. Defendant *then* sought to introduce the medical history given to Dr. Effron by defendant, and this was excluded as too remote. The medical history given by a patient to his physician or surgeon for the purposes of treatment is admissible. *Epstein v. National Casualty Company,* 1 *N. J.* 409, 415 (1949). Under the circumstances of this case, the medical history should have been permitted to go into evidence and this is the point at which the prejudicial error occurred. A failure to subsequently connect the medical history with the condition of the defendant at time of the event in relation to capacity to operate the automobile was open to a motion to strike the testimony.

Finally Dr. Effron was asked a hypothetical question which assumed as a factor that defendant had suffered a cerebral anemia (that is, a deficiency in blood supply to the brain) in June. This was excluded on the ground that there was no evidence of cerebral anemia in the record. The record supports this ruling although the question might have been unobjectionable had a proper foundation been laid. The medical history may have constituted the introduction to such a foundation had it been admitted into evidence. Dr. Effron was then excused, the defendant reserving the right to recall him. This was not attempted but it is obvious that any endeavor to elicit evidence from him after the exclusion of the medical history would have been futile.

The questions asked of Dr. Eisenstein, to which the State's objections were sustained, were hypothetical and of comparable category with those addressed to Dr. Effron, with

the exception of medical history. At the time when the opinion questions were propounded, facts were not in evidence to constitute a proper foundation therefor. However, had the foundation evidence been previously elicited through the examination of Dr. Effron, these questions may have been material, competent and relevant.

Although it was his decision to make in marshalling evidence in support of his defense, it is noted that the defendant failed to introduce medical evidence in the testimony of his physician, Dr. Mufson (asserted at the oral argument before this court to have been a resident of the State of New York and who examined him within a week after the incident) by deposition or otherwise, under *Rule* 2 :5–6. There appears to have been no effort on his part in this respect to resort to the "Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings" (see *N. J. S.* 2*A* :81–18 to 23, formerly contained in *L.* 1941, *c.* 88, *N. J. S. A.* 2 :98–27 to 41).

Defendant contends that the trial court's admission into evidence of opinions of lay witnesses as to whether he was intoxicated at the time of the accident constituted trial error. This question was not presented to the Superior Court, Appellate Division. *Rule* 1 :3–2 (*a*). Further defendant's position in this respect is not sound. It is the established practice in this State to permit evidence of this character. *Castner v. Sliker,* 33 *N. J. L.* 507, 509 (*E. & A.* 1869).

Defendant further contends that the verdict of the jury was against the weight of the evidence. In view of the fact that this case must be remanded for a new trial and additional evidence may be developed thereon an expression of our judgment in this respect at this posture of the case is deemed improper.

From a study of the entire record of the proceedings had upon the trial, it appears that the exclusion of Dr. Effron's testimony as to medical history was an abuse of dis-

456

cretion on the part of the trial court, and that the defendant suffered manifest wrong or injury therein.

For the reasons stated the judgment of the Superior Court, Appellate Division, is affirmed.

*For. affirmance*—Justices OLIPHANT, BURLING and BRENNAN—3.

*For reversal*—Chief Justice VANDERBILT, and Justice WACHENFELD—2.