James GRIGSBY *v.* STATE of Arkansas

CR 76-60                               542 S.W. 2d 275

Opinion delivered October 25, 1976

*Thomas E. Robertson Jr.* and *Hubert Graves,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Grigsby was sentenced to life imprisonment without parole for the capital felony murder of John Henry Childers while in the perpetration of a robbery. We find no reversible error and affirm.

Among his stated points for reversal are the following:

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION IN LIMINE THAT JURORS WHO WOULD NOT CONSIDER THE DEATH PENALTY NOT BE EXCUSED FOR CAUSE IN THAT PART OF THE TRIAL AT WHICH DEFENDANT'S GUILT OR INNOCENCE WOULD BE DECIDED.

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR PAYMENT OF TRAVEL EXPENSES AND WITNESS FEES TO EXPERT WITNESSES WHO WOULD TESTIFY THAT A JURY COMPOSED ONLY OF PERSONS WHO WOULD BE WILLING TO CONSIDER THE DEATH PENALTY IS MORE LIKELY TO CONVICT THAN IS A JURY COMPOSED OF A CROSS SECTION.

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A ONE WEEK CONTINUANCE IN ORDER TO PRESENT EVIDENCE THAT A JURY COMPOSED ONLY OF PERSONS WHO WOULD CONSIDER THE DEATH PENALTY IS MORE LIKELY TO CONVICT THAN IS A JURY COMPOSED OF A CROSS SECTION.

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AS TO CAPITAL FELONY MURDER AND FIRST DEGREE MURDER AND IN SUBMITTING AN OFFENSE HIGHER THAN SECOND DEGREE MURDER TO THE JURY.

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THE STATE

MUST PROVE THE ELEMENTS OF A MURDER IN ORDER FOR THE DEFENDANT TO BE CONVICTED OF A CAPITAL FELONY.

We see no point in discussing these points because the record and arguments supporting them are virtually identical to those in *Venable* v. *State,* 260 Ark. 201, 538 S.W. 2d 286 (1976). Our rejection of these arguments there is controlling here.

Appellant argues that the court erred in excusing prospective juror Blan, who was acquainted with the appellant and his family and who had found it difficult to say that he could try the case fairly and impartially without being influenced by this acquaintance. Even though he finally responded in the affirmative to appellant's attorney's question whether he could render a verdict based on the evidence presented in court and applied to the instructions of law given by the court, the circuit judge pursued the matter further, obviously because the state's attorney had challenged Blan for cause on the basis of earlier answers. When the judge asked Blan if he felt that he could be totally fair and impartial to both the state and the defendant if he was taken on the jury, Blan answered, "I don't believe I could be totally fair, no." The trial judge did not abuse his discretion by honoring the challenge for actual bias. Ark. Stat. Ann. § 43-1919 (Repl. 1964). See *Henslee* v. *State,* 251 Ark. 125, 471 S.W. 2d 352.

Appellant argues the following points for reversal:

THE COURT ERRED IN ALLOWING A DEFENSE WITNESS TO TESTIFY ABOUT CARTRIDGE CASES FOUND TWO DAYS AFTER THE OFFENSE WAS ALLEGED TO HAVE BEEN COMMITTED WHEN THE WITNESS WAS UNABLE TO SAY THAT THE SCENE WAS IN THE SAME CONDITION THAT IT WAS IN ON THE DAY OF THE ALLEGED OFFENSE.

THE COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO FURTHER DESCRIPTION OF THE SCENE WHERE THE BODY WAS FOUND WHEN THE WITNESS WHO

DISCOVERED THE BODY LEFT THE SCENE FOR APPROXIMATELY TWO HOURS AND RETURNED WITH A DEPUTY SHERIFF.

The two points are considered together because they are argued jointly by appellant, who relies upon *Oliver* v. *Miller,* 239 Ark. 1043, 396 S.W. 2d 288. The gist of appellant's argument is that the evidence admitted was too remote to be relevant and that the evidence was prejudicial, particularly since the evidence of murder was circumstantial and important inferences could be drawn from this testimony.

In evaluating this argument, we take into consideration a statement made by Grigsby to a police officer which was subsequently admitted into evidence without objection by appellant. That statement had exculpatory features, but appellant did admit therein that on the evening of the date in question he and Childers had been riding around drinking; the two were alone on a side road off Highway 309, when Grigsby showed Childers a .25 caliber automatic pistol, which Childers examined and started firing. Grigsby was quoted as saying that he grabbed Childers' arm and the gun went off, after which Childers' eyes started looking funny and he walked back to the car, sat down on the seat and fell over on it; Grigsby pulled him out, put him in the "edge of the bushes," took a $20 bill and a $5 bill from Childers' overalls, threw his billfold over by a tree, and took the car, leaving the man and a little white dog at the scene; he met Billy Belt and Mrs. Velma Smith along the road and told them what he had done. Grigsby stated that he, Mrs. Smith and Belt stopped along the Carbon City Road and fired at a beer can with his .25 caliber pistol, and that he later offered to sell the weapon to a man named Highfield.

Velma Smith had testified substantially as follows:

Appellant came to her house on July 18, 1975. Someone she did not know was in a brown and white Chevrolet that Grigsby was driving on this occasion. Mrs. Smith left with Billy Belt. Later they met Grigsby "coming back to town," driving the same automobile. Still later they met him "over by Hillard's farm" coming toward Ozark on Highway 309, still driving the same

car. She and Belt proceeded to O'Kane Island and Grigsby followed them there, where they all were drinking beer and talking and Grigsby told them he had killed a guy in Fort Smith, or thought he had. Mrs. Smith and Belt started back to the "Rock," a tavern in Paris, but stopped on a dirt road, where they were soon joined by Grigsby still driving the same car, when Belt and Grigsby fired several shells at a beer can from a "gun" Grigsby had.

There was evidence tending to show that John Henry Childers was the person Mrs. Smith had seen at her house in the brown and white Chevrolet and that the vehicle belonged to Childers. There was testimony that Grigsby had also told Warren George Highfield on July 18, 1975, that he had shot a man and that Grigsby had tried to sell a .25 automatic pistol to Highfield.

On Sunday, July 20, Billy Joe Davis was "riding around" in his pickup truck on Highway 309 and turned off on an old lane. After driving about a half mile, he turned around and started to get out of his truck, when he heard a dog barking. Since he was unable to see the dog, he called it. The dog came running out of a roll of wire. Behind the wire, Davis then saw the feet of a human. He immediately came to town and reported to Deputy Sheriff Kenneth Ross that he had found a dead man. This occurred about 10:45 a.m. Davis directed Ross to the place where the body lay. Ross remained there until Sheriff Pritchard and Arkansas State Police Criminal Investigator Stevens arrived at about 12:15 p.m. Ross examined the body. He described the location as a junk yard. He said the body was not easily seen from the road. Albert Helmert, radio dispatcher for the sheriff's office, testified that he accompanied the sheriff to the scene, where he found four empty cartridges for a small caliber pistol and a billfold. He also testified that he went with Ross, Mrs. Smith and others to a place along Carbon City Road, where six empty "hulls" and one bullet were found.

It is difficult to see how the introduction of the cartridges found at the place Belt and Grigsby fired at a can could have prejudiced appellant. The finding of six bullets and some cartridge cases along the Carbon City Road was relevant only to

the identity of the weapon from which the fatal bullets were fired, but there really does not seem to have been any issue on this point.

The medical examiner testified that the death of Childers was caused by multiple .25 caliber gunshot wounds, at least one of which could not likely have been self-inflicted. It was a question for the jury to say, after considering the circumstances, whether the fatal wounds were inflicted by Grigsby or they were accidentally inflicted, or whether someone else had subsequently come to the scene and fired .25 caliber bullets into the wounded body of Childers. The four cartridges found at the scene where the body was found and the four .25 caliber bullets taken from the body were shown by expert testimony to have been fired from the same weapon. This evidence had some bearing on the question whether there was a remote possibility that someone else wounded Childers after Grigsby left. The lapse of two days was not sufficient to make this evidence irrelevant. The description of the scene and the location of the body could also have had some bearing on the real issue, i.e., whether Childers was murdered or whether he was accidentally wounded in the manner described in Grigsby's statement. Stevens testified that Childers' body was in a brush area behind a pile of wire approximately 30 feet north of the roadway. This testimony along with that of Ross constituted the only significant description of the scene, except for that given by Davis.

The question of admissibility of this evidence is one of relevance to the issue. In *Everett v. State,* 231 Ark. 880, 333 S.W. 2d 233, we stated that the test of admissibility of evidence over an objection for irrelevancy is whether the fact offered in proof affords a basis for rational inference of the fact to be proved. It is sufficient if the fact may become relevant in connection with other facts or if it forms a link in the chain of evidence necessary to support a party's contention. *Glover v. State,* 194 Ark. 66, 105 S.W. 2d 82. See also, *Horne v. State,* 253 Ark. 1096, 490 S.W. 2d 806; *Williams v. State,* 257 Ark. 8, 513 S.W. 2d 793. The state's evidence on the question whether Childers was accidentally or deliberately wounded was largely circumstantial, and the fact that the body was not readily seen is a circumstance which might be taken to show

that Childers had been taken to this scene deliberately and his body left where it would not be readily found.

Too precise admeasurements of logical relevancy should not be used to withhold from a jury circumstances which may shed some helpful light on the issues. *State v. Micci,* 46 N.J. Super. 454, 134 A. 2d 805 (1957); *State v. Smith,* 5 Wash. App. 237, 487 P. 2d 227 (1971); *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965), cert. den. 384 U.S. 1020, 86 S. Ct. 1936, 16 L. Ed. 2d 1044; *Karnes v. Commonwealth,* 125 Va. 758, 99 S.E. 562, 4 ALR 1509 (1919). See also, *State v. Stokes,* 250 La. 277, 195 So. 2d 267 (1967); *State v. Shiren,* 15 N.J. Super. 440, 83 A. 2d 620 (1951), aff'd. 9 N.J. 445, 88 A. 2d 601 (1952); *Haley v. State,* 84 Tex. Cr. Rep. 629, 209 S.W. 675, 3 ALR 675 (1919). It is enough that the evidence may tend even slightly to elucidate the inquiry or to assist, however remotely, in a determination probably founded on truth. *New v. State,* 211 S. 2d 35 (Fla. App. 1968); *Holmes v. Goldsmith,* 147 U.S. 150, 13 S. Ct. 288, 37 L. Ed. 118 (1893). See also, *State v. Stokes,* supra. When evidence on an issue is circumstantial, it is never irrelevant to put in evidence any circumstance which may make the proposition at issue more or less probable. *Johnson v. Commonwealth,* 115 Pa. 369, 9 A. 78 (1887). Relevance is determined, not by resemblance to, but by connection with, other facts. *Oseman v. State,* 32 Wis. 2d 523, 145 N.W. 2d 766 (1966). See also, *Karnes v. Commonwealth,* supra. Objections to circumstantial evidence upon the grounds of irrelevancy are not favored because the force and effect of circumstantial facts usually, and almost necessarily, depend upon their connection with each other. *Bowline v. Cox,* 248 Ala. 55, 26 S. 2d 574 (1946).

The latitude of the trial judge's discretion in admitting circumstantial evidence is great. *Holmes v. Goldsmith,* supra; *Oseman v. State,* supra; *State v. Alexander,* 78 Wyo. 324, 324 P. 2d 831 (1958), cert. den. 363 U.S. 850, 80 S. Ct. 1630, 4 L. Ed. 2d 1733; *Bond v. State,* 105 Ga. App. 627, 122 S.E. 2d 310 (1961); *New v. State,* supra; *Bowline v. Cox,* supra. See also, *Karnes v. Commonwealth,* supra. Evidence of any fact which aids in establishing the defendant's guilt or innocence is usually held relevant, even though only a slight inference may be drawn from the fragmentary fact and it is only a link in the chain of facts which must be proved to make the proposition

at issue more or less probable. *Oseman* v. *State,* supra; *State* v. *Smith,* supra; *State* v. *Stokes,* supra; *Johnson* v. *Commonwealth,* supra. See also, *Jenkins* v. *Commonwealth,* 167 Ky. 544, 180 S.W. 961, 3 ALR 1522 (1915); *Haley* v. *State,* supra. The trial judge's determination on the question of admissibility of such evidence is to be reversed only if he has abused his wide discretion. *U.S.* v. *Campbell,* 466 F. 2d 529 (9 Cir., 1972), cert. den. 409 U.S. 1062, 93 S. Ct. 571, 34 L. Ed. 2d 516. See also, *Holmes* v. *Goldsmith,* supra. It has been said that such an abuse of discretion should not be found by an appellate court unless it manifestly appears that the evidence questioned has no legitimate bearing upon the question at issue and is calculated to prejudice the accused in the minds of the jurors. *Moore* v. *U.S.,* 150 U.S. 57, 14 S. Ct. 26, 37 L. Ed. 996 (1893).

We find no abuse of the trial court's discretion and the inability or failure of the state to show that conditions of the scene remained unchanged during Davis' two hour absence was a matter for the jury's consideration in weighing the evidence, but did not take the question of admissibility of the evidence outside the scope of the judge's discretion.

Appellant argues that his motion for directed verdict and reduction of his charge to one of first degree murder should have been granted. This argument is based upon his contention that the only evidence about what happened at the time of the killing showed that he took Childers' property after the killing, and that there is no evidence that this taking was anything other than an afterthought. For us to rule as a matter of law that the robbery was an afterthought would require that portions of Grigsby's statement, which was mostly exculpatory, be taken at face value. If indeed Grigsby murdered Childers, and the killing was not accidental, it would be difficult to believe that anything other than robbery motivated the killing. Suffice it to say that the circumstantial evidence here furnishes adequate support for the jury's finding that Childers was killed in the perpetration of a robbery. See *Upton* v. *State,* 257 Ark. 424, 516 S.W. 2d 904.

In his statement, Grigsby said that he was hitchhiking on Highway 10 when Childers picked him up and took him to Childers' house trailer where they started drinking wine and beer. The appellant, approximately thirty years old, and the

deceased, described as an elderly man, spent the afternoon visiting bars and drinking. Grigsby was unemployed and later in the day had to borrow money from Childers to pay for a bottle of whiskey. In his statement, Grigsby said that he had stolen the death weapon from a woman in Fort Smith, from whence he had started his hitchhiking journey. He stated that he had thrown the pistol away.

For the purpose of considering appellant's argument (which was approached but not actually reached in *Upton* v. *State,* supra and *Upton* v. *State,* 254 Ark. 664, 497 S.W. 2d 696) there is no substantial difference in the capital felony murder statute under which he was prosecuted, Act 438 of 1973 [Ark. Stat. Ann. § 41-4702 (Supp. 1973)] and its predecessor, Ark. Stat. Ann. § 41-2205 (Repl. 1964), i.e., the definitions were substantially the same. In the earlier statute, murder committed in the perpetration, or attempt to perpetrate, robbery was made murder in the first degree. In the 1973 act the unlawful killing of a human being when committed by a person engaged in the perpetration of or in the attempt to perpetrate robbery was made a capital felony.

We find no room for quarrel with appellant's assertion that larceny from the body of one killed, as an afterthought, would not constitute a capital felony. We do not agree, however, that the jury was bound to accept his exculpatory statement to the officer or that there was no evidence from which the jury could reasonably infer that the taking of the deceased's automobile and money was a part of the same acts and transactions in which Childers was killed, and that robbery was the motivating purpose of the incidents taking place at the death scene.

The underlying rationale of the felony-murder rule, both statutory and common law, is that the killing constitutes a part of the res gestae of the accompanying felony and both are parts of one continuous transaction. *People* v. *Mason,* 54 Cal. 2d 164, 4 Cal. Rptr. 841, 351 P. 2d 1025 (1960); *Bizup* v. *People,* 150 Col. 214, 371 P. 2d 786, cert. den. 371 U.S. 873, 83 S. Ct. 144, 9 L. Ed. 2d 112; *Conrad* v. *State,* 75 Ohio St. 52, 78 N.E. 957 (1906); *State* v. *Anderson,* 10 Wash. 2d 167, 116 P. 2d 346 (1941). Where the robbery and the killing are so closely connected in point of time, place and continuity of action as

to constitute one continuous transaction it is proper to consider both as a single transaction and the homicide as a part of the res gestae of the robbery. *Bizup* v. *People,* supra; *People* v. *Mason,* supra. The sequence of events is unimportant and the killing may precede, coincide with or follow the robbery and still be committed in its perpetration. *Conrad* v. *State,* 75 Ohio St. 52, 78 N.E. 957 (1906); *State* v. *Anderson,* 10 Wash. 2d 167, 116 P. 2d 346 (1941).

Where the killing and the felony cannot rationally be disassociated, an inference that the killing was part of the res gestae is justifiable, particularly as against retrospective subjective disavowal. *State* v. *Anderson,* supra. Where the circumstances permit an inference that the killing and the robbery were all part of one transaction, the state is not required to prove intent to commit the felony by direct evidence. *People* v. *Mason,* supra. It has been aptly said that from the very nature of things it is often impossible for the state to know at just what instant a killing was committed — whether in the commission of a felony or while withdrawing from the scene of a felony. *State* v. *Anderson,* 10 Wash. 2d 167, 116 P. 2d 346 (1941); *State* v. *Whitfield,* 129 Wash. 134, 224 P. 559 (1924). The Supreme Court of California has said that it has never required proof of strict causal relationship between the felony and the homicide. We agree with that court that the statute was adopted for the protection of the community, not the lawbreaker, and to make punishment of this class of crime more certain and not to relieve the wrongdoer from any probable consequences of his act by placing an unreasonable or unnatural limitation upon the res gestae. *People* v. *Mason,* supra.

Intent in such a case as this may be gathered from what was done. *State* v. *Hauptmann,* 115 N.J. Law 412, 180 A. 809 (1935). Certainly, the intent may be found from the facts and circumstances in a particular case. *Commonwealth* v. *Hart,* 403 Pa. 652, 170 A. 2d 850, cert. den. 368 U.S. 881, 82 S. Ct. 130, 7 L. Ed. 2d 81. In a case in which an accused testified that he struck a fatal blow in self-defense and in a confession had said that he had decided to take his victim's money as the latter lay on the ground after having been struck, the Pennsylvania Supreme Court held that the argument that the intention to rob originated after the assault on the deceased did not merit

serious consideration in view of the jury's verdict finding the accused guilty of murder in the perpetration of a robbery. The court said that it was immaterial when the design to rob was conceived, if the homicide occurred while the accused was perpetrating or attempting to perpetrate a robbery, pointing out that the circumstances leading up to the attack were indicative of an assault with intent to rob. *Commonwealth* v. *Stelma,* 327 Pa. 317, 192 A. 906 (1937). In considering a similar contention, the Pennsylvania court later had this to say in *Commonwealth* v. *Hart,* supra:

> Defendant's highly technical argument amounts to this: Unless the Commonwealth proves that the intention to commit a robbery was formed before the beginning of the fatal assault, the evidence cannot amount to a murder which was committed in the perpetration of a robbery. In other words, defendant would require a televised stop-watch in every robbery or felony-killing to prove that the felonious intent existed before the attack. It is rare, we repeat, that a criminal telephones or telegraphs his criminal intent and consequently such intent can be properly found by the jury from the facts and circumstances in a particular case. *****

> *****

> The law which has been in existence for many centuries in England and for ages in our Country, was enacted for the safety and protection of peaceable citizens of each community and we will not permit it to be thwarted or evaded by such a far-fetched and realistically-absurd construction of the Penal Code.

We agree with the sentiments of the Pennsylvania Supreme Court. We find the circumstantial evidence of intent sufficient to support a finding that appellant was guilty of capital felony.

We have, as we do in cases where the penalty imposed is death or life imprisonment, reviewed the record for other objections made by the defendant during the proceedings in the trial court and find none worthy of consideration.

The judgment is affirmed.

We agree: HARRIS, C.J., GEORGE ROSE SMITH and JONES, JJ.