Brenda OWENS *v.* STATE of Arkansas

CR 93-214                                856 S.W.2d 288

Supreme Court of Arkansas
Opinion delivered June 21, 1993

*Donald A. Forrest*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. At approximately 3:00 a.m. on the morning of April 25, 1991, Deputy Sheriff Ray Bosewell of the Crittenden County Sheriff's Office was dispatched to the west-

bound rest area off of Interstate 40 near West Memphis, Arkansas, to investigate a call concerning a person who reportedly was walking along the freeway. Bosewell saw no one walking along the freeway, but did, upon entering the "Truck Parking" section of the rest area, come across the dead body of Joseph Hamilton. The body was located approximately 17 feet from a nearby shade tree and 173 feet from Hamilton's tractor-trailer rig in which his wife was sleeping. Investigators discovered several pieces of Hamilton's personal property as well as blood stains beneath the shade tree. Hamilton's trousers were down around his knees and a leather belt and buckle were wrapped around his left hand. His boots were off, laying near his body. Hamilton had been stabbed over twenty-eight times; many of the wounds were characterized as "defensive." Two empty wallets, identified as belonging to Hamilton, were found near his body and a bloody wad of bills was found under his head.

Appellant, Brenda Owens, was charged with the capital murder of Hamilton under Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1991). She was convicted by jury. The State specifically alleged that Owens, "committed or attempted to commit the crime of robbery, and in the course of and furtherance of said felony or in immediate flight therefrom, caused the death of Hamilton under circumstances manifesting extreme indifference to the value of human life." The death penalty was waived, and the jury set Owens' sentence at life in prison without possibility of parole. Owens appeals from that judgment of conviction and alleges the trial court erred in the three following respects: (1) by denying her motion for a directed verdict, (2) in admitting into evidence a knife found near the scene, and (3) in instructing the jury on the lesser included offenses of first degree and second degree murder. We find no merit in Owens' arguments, and therefore affirm.

We must address Owens' directed verdict contention first because it involves a challenge to the sufficiency of the evidence which must be considered prior to a review of trial errors. *See, Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, whether direct or circumstantial. *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988). Substantial evidence is evidence forceful

enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). However, in determining the sufficiency of the evidence, this court need only ascertain that evidence most favorable to appellee, and it is permissible to consider only that testimony which supports the verdict of guilty. *Id.*

Capital murder under subsection (a)(1) of § 5-10-101 is defined as follows:

> (a) a person commits capital murder if:
>
> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit rape, kidnapping, vehicular piracy, robbery, burglary, a felony violation of the Uniform Controlled Substances Act, §§ 5-4-101 — 5-4-608, involving an actual delivery of a controlled substance, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

Owens' sufficiency argument is twofold. She first claims there is no substantial evidence which shows her to be the killer; second, she attacks as insufficient, both the evidence indicating that a robbery occurred as well as that reflecting the requisite intent to rob.

We conclude substantial evidence exists to support the jury's finding that Owens was the perpetrator. Several of Owens' acquaintances testified at trial. Janet Reeves testified that at some time in April she and her boy friend, Ellis Aldridge, drove to the west-bound I-40 rest area at about 2:00 or 3:00 a.m. and let Owens out. Although Reeves could not remember the date on which Owens was given a ride, she did recall seeing Owens "the next day or the day after" she and Aldridge provided the ride, and observed scratches, bruises and whelps on Owens' legs, arms, neck and throat. Most important, Reeves testified that Owens told her that she had been attacked by a truck driver and she stabbed him. Another friend of Owens', Mary Kat Collins, testified that Owens, Reeves, and Aldridge were at her house on the evening of April 24, 1991, and stated she remembered Owens

asking Aldridge to drive Owens to a rest stop. Further, she stated that she too saw Owens on the morning of April 25th, and Owens had lacerations on her arm, back and neck, which marks, claimed Collins, were non-existent the previous night. Finally, Collins too testified that Owens stated she had been attacked by a truck driver.

Three other truck drivers had parked their rigs at the rest area on the morning of April 25th, and those drivers, Joseph Weigel, John McCalman and William Johnson, testified that, between 2:00 to 2:15 a.m., they each, in succession, were awakened by a woman banging on the door of their rig. Each asked the woman what she wanted and testified the woman requested money for sex. Each declined the offer and told the woman to get off of his truck, whereby each was then verbally abused by the prostitute. At trial, all three men testified that they were positive it was Owens who had awakened them and offered sex. Weigel testified that the lighting conditions at the parking lot were ".good" and Johnson stated that Owens had a "big nose" which was "pretty hard to miss." In addition, each claimed that Owens wore her hair in braids and remembered Owens as wearing a white dress and a brown/blue reversible jean jacket.

Investigators found a brown/blue reversible jacket underneath the shade tree, and McCalman identified that jacket as the one worn by Owens when she made her offer of sex. At trial, all three men identified the jacket as that worn by Owens. And finally, Collins corroborated the truck drivers' testimony by stating that she remembered Owens wearing a white dress and "western type" jacket on the night of the 24th.

■ From the foregoing evidence albeit circumstantial, a jury reasonably determined that Owens was at the rest area on the morning of April 25, and that she stabbed Hamilton to death. We affirm the jury's decision.

Owens also claims the evidence presented to prove the underlying felony—robbery—and the concomitant mental state—intent to rob—was insufficient to support the jury's verdict. We disagree. The victim's wife, Norma Hamilton, testified that at the time of her husband's death, Hamilton was carrying approximately $650. She further stated that her husband always carried two wallets. Both wallets were found at the

scene—one under the victim and the other underneath the shade tree—and both were empty. In addition, a bloody wad of bills, determined to be only $242, was found under Hamilton's head.

Over the years this court has decided a handful of similar cases where the appellant contended on appeal that the evidence of robbery and intent to rob was insufficient to support a conviction for capital murder. As to proof that a robbery occurred, the recent case of *Sanders* v. *State*, 310 Ark. 510, 838 S.W.2d 359 (1992) is controlling. There, this court affirmed, as supported by substantial evidence, the jury's finding that a robbery took place where the victim's landlord testified that he had visited his tenant, a bootlegger, on the night prior to discovering his body lying in a pool of blood. Upon finding the body, he also noticed that about six cases of beer, twenty half pints of vodka and whiskey, and some money he had given the victim the night before were missing. The court held the landlord's testimony alone was substantial evidence that the underlying felony offense—robbery—had indeed occurred. *See Also, State* v. *Patterson*, 306 Ark. 385, 815 S.W.2d 377 (1991).

As to the general rule concerning sufficient proof of the necessary "intent to rob," the principles espoused in *Grigsby* v. *State*, 260 Ark. 499, 542 S.W.2d 275 (1976), are applicable here. In relevant part the *Gribsby* court stated the following:

> Where the robbery and the killing are so closely connected in point of time, place and continuity of action as to constitute one continuous transaction it is proper to consider both as a single transaction and the homicide as a part of the res gestae of the robbery. (cites omitted.) The sequence of events is unimportant and the killing may precede, coincide with or follow the robbery and still be committed in its perpetration. (cites omitted.)
>
> . . . Where the circumstances permit an inference that the killing and the robbery were all part of one transaction, the state is not required to prove intent to commit the felony by direct evidence. (cites omitted).

*Grigsby*, 260 Ark. at 508-09, 542 S.W.2d at 280-81.

When we consider that Owens was placed at the scene of the crime approximately one hour before police discovered

Hamilton's body and that money which Hamilton previously had in his possession was now missing, we have no problem in concluding that the robbery and murder occurred in close proximity to one another. Consequently, the jury was justified in finding the robbery and murder to be one continuous transaction.

Owens' next argument is that the trial court erred in admitting into evidence a knife found near the scene of the crime. The objection at trial was based only on relevancy. On appeal, Owens claims the judge erred because, "in short, no link between the knife and the homicide was ever made, nor any link between the knife and Brenda."

■ As we have stated many times, the trial court's ruling on relevancy is entitled to great deference and will be reversed only if the court has abused its discretion. *Qualls* v. *State*, 306 Ark. 283, 812 S.W.2d 681 (1991). According to Ark. R. Evid. 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

■ The trial judge allowed admission in this instance because the knife sought to be introduced was discovered by investigators in a ditch which was directly south of Hamilton's body on the opposite side of the freeway. Testimony was adduced to the effect that at the time of its discovery, the knife was covered in blood. Moreover, the knife's blade had only one edge. This fact was relevant because Dr. Violette Hnilica, an Associate State Medical Examiner, previously testified that the knife which caused Hamilton's wounds employed a single-edged blade. Clearly, introduction of the knife was relevant in determining whether this knife was indeed the murder weapon. Moreover, when we consider Janet Reeves' testimony that Owens confessed to stabbing a truck driver, we find no abuse of discretion because introduction of the knife did tend to connect Owens to a knife found near the situs of the crime. *See, Brooks* v. *State*, 308 Ark. 660, 827 S.W.2d 119 (1992).

■ As her final point for reversal, Owens argues the trial judge erred by instructing the jury on the lesser included offenses of first degree murder [Ark. Code Ann. § 5-10-102 (suppl. 1991)] and second degree murder [Ark. Code Ann. § 5-10-103

(suppl. 1991)] on the premise that she was never charged with the "premeditation and deliberation" portion of the capital murder statute. *See*, Ark. Code Ann. § 5-10-101(a)(4) (suppl. 1991). This specific argument is raised for the first time on appeal. At the trial's conclusion, Owens objected to the instructions on the ground that there was "no basis" for the lesser included offenses. These two contentions are significantly different and as a consequence, the trial judge was never apprised of the argument Owens now makes on appeal. It is well settled that an appellant cannot change his or her argument on appeal. *Mobbs* v. *State*, 307 Ark. 505, 821 S.W.2d 769 (1991); *Parette* v. *State*, 301 Ark. 607, 786 S.W.2d 817 (1990).

Because life imprisonment is the sentence, Rule 4-3(h) of our Supreme Court Rules comes into play. Although Owens' abstract does not contain all objections made at trial, the state's abstract supplements those deficiencies. The record in this case has been examined in accordance with Rule 4-3(h), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.