Dennis Van JENKINS *v.* STATE of Arkansas

CR 02-46 85 S.W.3d 878

Supreme Court of Arkansas
Opinion delivered October 3, 2002

*William R. Simpson, Jr.*, Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Dennis Van Jenkins appeals the order of the Pulaski County Circuit Court convicting him of first-degree felony murder, aggravated robbery, and theft of property. He was sentenced to terms of life imprisonment, thirty years' imprisonment, and ten years' imprisonment, respectively. The trial court ordered that the ten-year and thirty-year sentences were to run concurrently, but consecutively to the life-imprisonment sentence. Appellant's sole point on appeal is that there was insufficient evidence of robbery to support his conviction for first-degree felony murder. As this appeal involves a sentence of life imprisonment, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

The circumstances leading up to this case took place on December 11, 1999. On that day, Appellant was riding around the Little Rock area with Alvin Pugh, Chemer Beene, and Anthony Hawkins when the Cadillac they were in had a flat tire. The group pulled into a car wash on Wright Avenue in order to repair the flat. According to Appellant, after repairing the flat tire, they were unable to start the car. At that time, Kelin Rudley attempted to assist the group by jumping their battery. While trying to jump the battery, Mr. Rudley was shot in the neck by Appellant. While the circumstances leading up to the shooting are in dispute, the fact that Appellant shot Mr. Rudley was undisputed. It is also undisputed that the group fled in the 1998 Toyota Tacoma truck Mr. Rudley had been driving. Mr. Rudley subsequently died as a result of the gunshot wound.

The following day, police discovered the Toyota truck in front of a trailer on Chicot Road where Pugh lived. Pugh advised police where to look for clothes that were missing from the truck. Police subsequently searched the intersection of Oxford Valley and Churchill Drive where the items of clothing were found. Pugh also told police that Appellant was the one who drove the truck away from the scene of the crime.

Police located Appellant on December 13, and asked him if he could come to the police station to answer a few questions. Appellant complied and eventually gave police a statement admitting to shooting Mr. Rudley, but claiming that he did so in self-defense. Specifically, Appellant claimed that Rudley was mouthing off and acting funny. Appellant said he only shot Mr. Rudley after he "flinched" at him.

Appellant was arrested and charged with capital felony murder, aggravated robbery, and theft of property. At trial, Beene confirmed Appellant's account that the group had been driving around and stopped at a car wash to repair a flat tire. When the Cadillac would not start again, Beene approached Mr. Rudley and asked if he would jump their battery. She stated that she assisted Mr. Rudley in hooking up the jumper cables, but then walked to the rear of the Cadillac. According to Beene's testimony, she heard Appellant say to Mr. Rudley, "What the fuck you doing?"

She then turned around and saw Appellant holding a gun. Beene stated that she then heard a gunshot and took off running down the street with Hawkins. Appellant and Pugh picked the two up shortly thereafter, and according to Beene, Appellant was driving the truck at that time. Finally, Beene testified that Appellant said to them, "Y'all mother-fuckers think I'm playing. I'll kill me another mother-fucker, too."

Detective Ronnie Smith testified at trial that police discovered an abandoned Cadillac in one of the bays at the car wash. A spare tire was on the left rear side of the vehicle and jumper cables were still attached to the vehicle's battery. Smith stated that he developed Appellant as a suspect based on information from Pugh.

Following Smith's testimony, the State rested. Appellant then made a motion for a directed verdict challenging the sufficiency of the evidence relating to the charge of the underlying felony, aggravated robbery. The trial court denied the motion. Following the defense's presentation of evidence, Appellant renewed his motion for a directed verdict. Again, it was denied. The case was subsequently submitted to the jury, and Appellant was convicted and sentenced as previously stated. This appeal followed.

A motion for a directed verdict challenges the sufficiency of the evidence. *Pickens v. State*, 347 Ark. 904, 69 S.W.3d 10 (2002); *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001); *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). The test for determining sufficiency of the evidence is whether substantial evidence, direct or circumstantial, supports the verdict. *Pickens*, 347 Ark. 904, 69 S.W.3d 10. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id*. On appeal, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id*.

On appeal, Appellant argues that the trial court erred in denying his motion for a directed verdict, because the State failed to prove that he killed Mr. Rudley in order to steal his truck. According to Appellant, the evidence presented at trial merely established that an altercation arose between himself and the vic-

tim and that Appellant reacted to a perceived threat. The State counters by arguing that the issue is not preserved for review. According to the State, Appellant's motion for directed verdict related only to the charge of capital felony murder, but he was convicted of first-degree felony murder; thus, he was required to specify in his motion challenges to the offense charged, as well as any lesser-included offenses. Alternatively, the State argues that there was sufficient evidence to support Appellant's conviction. While the State's procedural argument is without merit, we agree that there was sufficient evidence supporting Appellant's conviction.

In arguing that Appellant failed to make a directed-verdict motion with regard to the lesser-included offense of first-degree felony murder, the State relies on this court's recent opinion in *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). There, we held that a defendant waived his challenge on appeal to the sufficiency of the evidence supporting a conviction of a lesser-included offense. At trial, the appellant made a specific motion for directed verdict only on the offense of first-degree battery. He was subsequently convicted of the lesser-included offense of second-degree battery. The appellant's failure to challenge any elements of second-degree battery precluded this court's review of the issue.

The instant case, however, does not involve a situation where the elements of first-degree felony murder differ from the elements of capital felony murder. In *Walker v. State*, 318 Ark. 107, 883 S.W.2d 831 (1994), this court elaborated on the reasons behind the rule requiring a specific motion. There, this court stated:

> Other practical reasons have caused us to require that the grounds for the motion be specified. In multiple-count cases, which mandate different degrees of culpability for the lesser included offenses, it is easy for an element of one of the counts for lesser included offenses to be overlooked. Since a general motion for a directed verdict does not specify the missing element, the trial court is not apprised of the proof that was overlooked. As a result, the trial court is not made aware of the

deficiency. *See, e.g., Sanders v. State*, 310 Ark. 510, 838 S.W.2d 359 (1992).

*Id.* at 108, 883 S.W.2d at 832. Thus, the underlying purpose in requiring Appellant to specify the grounds for a directed-verdict motion is not defeated in this case.

■ ■ Moreover, in *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001), this court stated that when dealing with the crimes of capital murder or first-degree felony murder, the culpable intent or *mens rea* relates to the crime of the underlying felony, in both cases that crime being aggravated robbery, and not to the murder itself. Here, Appellant made the following motion for directed verdict at the close of the State's evidence:

> Your Honor, Defense would like to at this time make a Motion for a Directed Verdict. We do not feel with the evidence presented today, that the State has established its *prima facie* case on both counts, on all three counts, capital murder, aggravated robbery and theft of property. The basis for this Motion, Your Honor, is that so far from what this Court has heard the only connection between the Defendant and the commission of an aggravated robbery itself is the testimony of the impeached witness, Chemer Beene, who claims that she saw the Defendant in the driver's seat of the truck immediately after the shooting occurred. This relatively represents circumstantial evidence of the aggravated robbery. As the Court knows, circumstantial evidence is to be inconsistent with any other possibility. Your Honor, we feel that with the nature of her testimony presented as the Court is aware, that, excuse me, and the absence of any other evidence, that they have not established the *prima facie* case for aggravated robbery. Therefore, they have also not established the *prima facie* case for capital murder which necessitates that they prove that aggravated robbery was committed or that the death was committed while in the commission or attempted to commit the aggravated robbery of [*sic*] furtherance of that or flight therefrom.

Again, once the defense rested, the motion for directed verdict was renewed and stated in relevant part:

> We would renew our earlier motions for directed verdict. Again, basically the same argument as before that the circumstantial evi-

dence presented by the State today, which we only believe is circumstantial evidence, does not establish a *prima facie* case for the three counts today, capital murder, aggravated robbery and theft of property. We do not feel that specifically in Count I that the element of aggravated robbery, that this death was caused in the commission of that, has been established. We do not feel that based on the testimony that, I believe of Chemer Beene that the Defendant was seen briefly in the truck thereafter the shooting occurred establishes these elements, and that would be the basis for our Motion, Your Honor.

Thus, Appellant's motion for a directed verdict sufficiently apprised the trial court that he was challenging the sufficiency of the evidence of the crime of aggravated robbery, as the underlying offense for the felony murder charge.

Finally, the instructions given to the jury demonstrate that the elements at issue in this case were identical. The capital felony murder instruction and first-degree felony murder instruction given at trial, which are based on our criminal statutes, read as follows:

> Dennis Jenkins is charged with the offense of Capital Murder against Kelin Rudley. To sustain this charge, the State must prove beyond a reasonable doubt:
>
> First: That Dennis Jenkins, or an accomplice, committed or attempted to commit the crime of Aggravated Robbery; and
>
> Second: That in the course of and in furtherance of that crime, or in immediate flight therefrom, Dennis Jenkins, or an accomplice, caused the death of Kelin Rudley under circumstances manifesting an extreme indifference to the value of human life.
>
> If you have a reasonable doubt of the Defendant's guilt on the charge of Capital Murder, you will then consider the charge of Murder In the First Degree.
>
> To sustain the charge of Murder in the First Degree, the State must prove beyond a reasonable doubt that:
>
> [First:] That Dennis Jenkins, or an accomplice, committed or attempted to commit Aggravated Robbery;
>
> Second: That in the course of and in furtherance of that crime, or attempt or in immediate flight therefrom, Dennis Jenkins, or an accomplice, caused the death of Kelin Rudley under

circumstances manifesting extreme indifference to the value of human life.

*See* Ark. Code Ann. § 5-10-101(a)(1) and § 5-10-102(a)(1) (Repl. 1997).

■ In short, the elements that the State had to prove in order to obtain a conviction on either charge were identical. Thus, this is not a situation where Appellant in making his directed-verdict motion was required to set forth differing elements. Therefore, Appellant's motions for directed verdict were properly preserved for review.

Turning now to the merits of Appellant's point on appeal, our review of the record reveals that there was sufficient evidence to support Appellant's conviction. Specifically, the State was required to prove and did prove that Appellant murdered Mr. Rudley in the course of or in furtherance of the crime of aggravated robbery, namely, stealing the Toyota truck Mr. Rudley was driving.

In *Owens v. State*, 313 Ark. 520, 856 S.W.2d 288 (1993), this court acknowledged that it had decided several other cases where similar arguments were made regarding the lack of proof of robbery or intent to rob to support a capital-murder conviction. There, the court concluded that evidence placing the appellant at the scene of the crime shortly before police discovered the victim's body and evidence that money was missing from the victim was sufficient to prove that the robbery and the murder occurred in close proximity to one another. Thus, this court concluded that the jury was justified in finding that the two offenses constituted one continuous transaction. *Id.*

■ The theory of one continuous transaction was succinctly set forth by this court in *Grigsby v. State*, 260 Ark. 499, 508-09, 542 S.W.2d 275, 280 (1976) (citations omitted):

> The underlying rationale of the felony-murder rule, both statutory and common law, is that the killing constitutes a part of the *res gestae* of the accompanying felony and both are parts of one continuous transaction. Where the robbery and the killing are so closely connected in point of time, place and continuity of action as to constitute one continuous transaction it is proper to

> consider both as a single transaction and the homicide as a part of the *res gestae* of the robbery. The sequence of events is unimportant and the killing may precede, coincide with or follow the robbery and still be committed in its perpetration.

The court further noted that intent may be inferred from the facts and circumstances of the particular case. Ultimately, this court in *Grigsby* rejected the appellant's argument that the robbery was an afterthought, as it would require them to take portions of the defendant's mostly exculpatory statements at face value.

A similar result occurred in *Sanders v. State*, 310 Ark. 510, 838 S.W.2d 359 (1992). *Sanders* involved the murder of a man involved in a bootlegging operation. The owner of the building in which the victim's operation was housed testified that he visited the victim the night before the murder and found him in good health and in possession of an ample supply of beer and whiskey. The next day he found the victim lying in a pool of blood and several cases of beer and pints of whiskey were missing, along with some money he had given the victim the previous evening. This court found such testimony established robbery as the underlying felony for the capital-murder conviction. *Id*.

Here, Appellant admitted to shooting Mr. Rudley, but denied that it was for the purpose of stealing the truck. Appellant also denied ever driving the truck. As previously pointed out, however, the jury was not obligated to believe Appellant's claim that he shot Mr. Rudley in self-defense. *See Grigsby*, 260 Ark. 499, 542 S.W.2d 275. This is particularly true in light of Beene's testimony that Appellant was the person driving the vehicle immediately following the murder.

 Other evidence supporting the jury's findings included Beene's testimony that Appellant made statements following the murder to the effect that he would kill again. Takisha Saab, the owner of the truck, also testified that the hubcaps, a radio, some compact discs, and a laundry basket with clothes were missing from the truck. Finally, Appellant's own statement, as well as the testimony of Beene, established that the group fled in the truck immediately after the shooting. Thus, there was evidence that the robbery and the murder were closely connected in

time, place, and continuity of action. This evidence supports a conclusion that the two crimes constituted one continuous transaction and is sufficient to support Appellant's convictions of both aggravated robbery and first-degree felony murder. Therefore, the trial court did not err in denying Appellant's motion for a directed verdict.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no error has been found.

Affirmed.