Brian Keith BANGS *v.* STATE of Arkansas

CR 98-1276 998 S.W.2d 738

Supreme Court of Arkansas
Opinion delivered September 16, 1999

Arkansas Public Defender Comm'n, by: *Mac Carder*, and *Teri L. Chambers*; and *Beverly C. Claunch*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. Appellant, Brian Keith Bangs, was found guilty of two counts of capital

murder in the deaths of his mother-in-law and father-in-law, Carol and Darrel Turner, rape, Class-B-felony kidnapping, and first-degree battery of his wife, Jennifer Turner Bangs, and felony theft of property, namely, a pickup truck belonging to Darrell Turner. Bangs was sentenced to two terms of life imprisonment in the Arkansas Department of Correction for the capital-murder convictions and to a total of eighty-five years' imprisonment for the remaining offenses. Accordingly, our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(a)(2) (1999). In the instant appeal, Bangs challenges the trial court's (1) denial of his motions for directed verdict regarding the capital-murder and first-degree battery convictions, (2) refusal to suppress his statements to an Arkansas State Police Investigator and the Stone County Sheriff, and (3) denial of his motion to strike two jurors for cause and grant of the State's motion to strike one juror for cause. We find no merit in appellant's arguments, and we affirm.

## I. Motions for directed verdict

### A. Standard of review

■ At the close of the State's case-in-chief, appellant moved for a directed verdict. The trial court denied the motion. On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Freeman v. State*, 331 Ark. 130, 131, 959 S.W.2d 400, 401 (1998) (citing *Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997)). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Freeman*, 331 Ark. at 131-32, 959 S.W.2d at 401.

■ Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Freeman*, 331 Ark. at 131-32, 959 S.W.2d at 401 (1998). Notably, the evidence may be either direct or circumstantial. *See Gillie v. State*, 305 Ark. 296, 301, 808 S.W.2d 320, 322 (1991). Circumstantial evidence can provide the basis to support a convic-

tion, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Gillie*, 305 Ark. at 301, 808 S.W.2d at 322 (citing *Trotter v. State*, 290 Ark. 269, 719 S.W.2d 268 (1986)).

## B. Capital-murder convictions

For his first point on appeal, Bangs argues that the State failed to present sufficient evidence to support his two capital-murder convictions. Pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997), a person commits capital murder if "with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person." Appellant contends that the evidence failed to establish premeditation and deliberation and that the only direct evidence supported his position that the shootings were an "impulsive act."

However, the State presented testimony that Bangs went to his estranged wife's home on the afternoon of the crime and hid in the home until he was discovered by his sister-in-law, Crystal. After the two talked, Bangs left the home. Between 6:30 p.m. and 7:30 p.m. Crystal and her son left the home, leaving it unlocked. According to appellant, he returned to the house, parked his truck at a neighbor's house, a quarter of a mile away, 250 feet from the road, and in some trees, so that the Turners would not see it upon their return. Bangs testified that he then entered the house, hid in the bathroom shower, and remained there until the family returned and went to bed around 10:30 p.m.

Subsequently, Bangs left the cover of the shower and shot Carol twice in the chest and Darrell in the upper left back and right arm, also causing injury to Darrell's right wrist. Bangs explained that Carol was sitting up in the bed when he shot her and that he merely "clicked" and began shooting. However, the medical examiner testified that both Carol and Darrell's injuries were consistent with their lying asleep in bed when they were shot. Tests of Carol's clothing also revealed that she was shot at close range.

■ We have stated that the trier of fact is free to believe all or part of a witness's testimony. *Freeman*, 331 Ark. at 134, 959 S.W.2d at 402 (citing *Mosley v. State*, 323 Ark. at 250, 914 S.W.2d at 734)). Moreover, the credibility of witnesses is an issue for the jury and not for this court. *Marta v. State*, 336 Ark. 67, 74, 983 S.W.2d 924, 928 (citing *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998)). Here, the jury declined to believe appellant's theory that he acted impulsively.

■ In any event, premeditation is not required to exist for a particular length of time. It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Green v. State*, 330 Ark. 458, 467, 956 S.W.2d 849 (1997). Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Id.*

■ Here, the medical evidence revealed that the victims' wounds were located in positions inconsistent with appellant's testimony and consistent with the victims lying in their bed. The nature and distribution of the wounds coupled with appellant's own testimony that he waited in the Turners' home, hidden in the shower and armed with a gun, provided substantial evidence of premeditation and deliberation. Viewed in the light most favorable to the State, we conclude that there is sufficient evidence to support appellant's capital-murder convictions.

## C. First-degree battery conviction

Appellant's wife, Jennifer, testified that she was awakened by the shootings and by appellant when she was "yanked up out of the bed." She called to her father for help, and appellant hit her in the head with a gun. Bangs then dragged her through the hallway by her foot, leaving bloodstains on the carpeting. Appellant then told her, "There is no use in yelling because I shot your mom and dad." Jennifer next recalled that she was sitting in her father's

truck and that Bangs had tied her hands with a cord. He also hit her several times in the face, and her head hit the back glass of the truck's cab. Bangs then drove her to a trailer where they lived, drug her by the cord into the trailer, and got more ammunition. He then drove her into the woods and raped her. At some point, he placed her shirt around her head to stop the bleeding, and when she "bled through" the shirt, he wrapped paper towels around her head and put a "toboggan" on it. Appellant eventually released Jennifer in the woods. Ultimately, she encountered a police car.

Jennifer was then admitted to the hospital for treatment. The surgeon who treated her wounds noted that she had two lacerations on her scalp, approximately five centimeters in length, which he closed with staples. She also had bruises on her forehead and face and blunt injuries to her scalp and the back of her head. Notably, the surgeon characterized the wounds as "serious physical injuries."

 Pursuant to Ark. Code Ann. § 5-13-201(a)(3) (Repl. 1997), a person commits first-degree battery if "he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." "Serious physical injury" is defined at section 5-1-102(19) (Repl. 1997 & Supp. 1999) as:

> physical injury that creates a *substantial risk of death* or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.

(Emphasis added.) Significantly, whether a victim has sustained serious physical injury is an issue for the jury. *See Purifoy v. State*, 307 Ark. 482, 489, 822 S.W.2d 374, 378 (1991). In light of the medical testimony and Jennifer's own account, the jury could reasonably conclude that Jennifer sustained serious physical injury. Accordingly, we hold that there was sufficient evidence to sustain appellant's first-degree-battery conviction.

## II. Appellant's statements to police

■ Appellant's second point on appeal challenges the trial court's admission of statements made by Bangs to Arkansas State Police Investigator Tommy Cleveland and to Stone County Sheriff Fred Black. Specifically, Bangs asserts that he never validly waived his rights, that the State did not conclusively establish that he actually made any statements, and that he was improperly questioned after requesting an attorney. When we review a trial court's ruling on a motion to suppress, we review the evidence in the light most favorable to the State and make an independent determination based upon the totality of the circumstances. *See Wright v. State*, 335 Ark. 395, 403-04, 983 S.W.2d 397, 401 (1998). Further, this court will only reverse a trial court's ruling on a motion to suppress if the ruling was clearly erroneous. *Phillips v. State*, 321 Ark. 160, 163, 900 S.W.2d 526, 528 (1995).

Stone County Sheriff's Deputy Sammy Wilson awakened appellant and arrested him at his home at approximately 10:45 a.m. on the morning of December 24, 1996. While handcuffing Bangs, Deputy Wilson informed him of his *Miranda* rights. Wilson then transported Bangs to the Stone County jail, where Investigator Cleveland awaited their arrival. Using a standard Arkansas State Police form, Cleveland read appellant his rights, asked whether he understood those rights, and noted appellant's affirmative responses. Although Bangs reviewed the form and indicated that he understood his rights, he refused to sign or initial the form. Accordingly, Cleveland noted that refusal on the form.

Next, with appellant's assistance, Cleveland completed a standard description-of-suspect form. Then, Cleveland began to question Bangs about the incidents. Due to appellant's objection to any notetaking, Cleveland wrote out a statement following the interview. According to that statement, Bangs admitted that he shot Carol and Darrell Turner. However, Bangs refused to sign that statement. Likewise, although Bangs conceded that neither Jennifer nor Crystal Turner was involved in the murders, he declined to sign a statement to that effect.

Sheriff Black joined appellant's interview at approximately 12:45 p.m., and Bangs thanked him for his treatment of appellant's family. Black noted that appellant looked tired but did not appear to be under the influence of drugs or alcohol. During the interview, Bangs repeated the statements that he had made to Cleveland. Again, however, he refused to sign a statement, adding that he would not do so without his lawyer.

■ Cleveland then asked Bangs who his lawyer was and, given a response, telephoned attorney Gray Dellinger at around 1:20 p.m. Dellinger confirmed the call. Dellinger testified that he spoke with Bangs on the telephone and that Bangs's voice was flat and monotone but that he seemed to understand Dellinger when he told him not to sign, consent to, or say anything. Following this telephone conference, Bangs's interview was concluded, and both Investigator Cleveland and Sheriff Black took notes regarding appellant's statements. Recently, in *State v. Sheppard*, 337 Ark. 1, 5, 987 S.W.2d 677, 680 (1999), we noted that questions about a statement's credibility and reliability, including whether it was recorded or in the accused's handwriting, are matters for the jury to resolve and not for the trial court to resolve when ruling on a motion to suppress. The jury was also entitled to resolve any factual dispute regarding attorney Dellinger's testimony and that of the police investigators.

■ Similarly, the jury could determine that appellant had the capacity to knowingly and intelligently waive his rights. In *Hayes v. State*, 312 Ark. 349, 354, 849 S.W.2d 501, 504 (1993), we held that a written waiver is not required to effect a valid waiver. Moreover, in *Bowen v. State*, 322 Ark. 483, 504, 911 S.W.2d 555, 565 (1995), we noted that the assertion of the right to counsel and the right to remain silent must be made with specificity. *Id.* (citing *Davis v. United States*, 512 U.S. 452 (1994)). When the appellant in *Bowen* acknowledged that he understood his rights but answered questions without mentioning those rights, we held that he waived the rights by implication. *Bowen*, 322 Ark. at 504, 911 S.W.2d at 565; *see also Standridge v. State*, 329 Ark. 473, 479, 951 S.W.2d 299, 301 (1997). Significantly, by merely

answering questions, one may waive by implication his right to remain silent. *Bowen*, 322 Ark. at 504, 911 S.W.2d at 565 (citing *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993); *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992); *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987)).

In the instant case, police investigators advised appellant of his rights, and appellant acknowledged that he understood those rights. Additionally, although he refused to sign a statement, he proceeded to answer questions. Reviewing the evidence in the light most favorable to the State and given the totality of the circumstances, we conclude that the trial court was not clearly erroneous in denying appellant's motion to suppress.

### III. Jury selection

Appellant's third point on appeal claims that the trial court erred by denying his challenges to strike two prospective jurors, Rayburn Holloway and Loyd McHenry, for cause. Additionally, Bangs asserts that the trial court erred by granting the State's challenge for cause to prospective juror Martha Collins. The State correctly notes that appellant's objections to venirepersons Holloway and McHenry are barred because he struck the two using peremptory challenges.

In *Willis v. State*, 334 Ark. 412, 420, 977 S.W.2d 890, 894 (1998), we declined to address a similar claim of error because it involved venirepersons that the appellant had excused via peremptory challenges. We noted that it is well-settled that the loss of peremptory challenges cannot be reviewed on appeal, and that the focus should be on persons actually seated on the jury. *Id.* (citing *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1990); *Pickens v. State*, 301 Ark. 244, 251, 783 S.W.2d 341, 345 (1990) (citing *Ross v. Oklahoma*, 487 U.S. 81 (1988))). Therefore, we need not consider whether Holloway and McHenry should have been struck for cause because they were not seated on the jury.

We also decline to consider appellant's claim that he was forced to accept juror Judy Price after exhausting his peremp-

tory strikes. In order to challenge a juror's presence on appeal, Bangs must demonstrate that he exhausted his peremptory challenges *and* that he was forced to accept a juror who should have been excused *for cause*. *See Willis*, 334 Ark. at 420, 977 S.W.2d at 895-96. Here, Bangs merely claimed that Price should be removed via a peremptory strike.

Finally, during voir dire, venireperson Martha Collins stated that she knew a potential witness in the case because her husband had hired the attorney to represent him in connection with methamphetamine charges brought against him by the prosecuting attorney. Collins suggested that she could be fair and impartial despite the pending charges against her husband and that she would not have a "built[-]in animosity" against the State. However, after continued questioning, she admitted that the situation would "bother" her. Appellant claims that Collins only became upset because the prosecutor "hollered at her."

The decision to excuse a juror for cause rests within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. *Nooner v. State*, 322 Ark. 87, 97-98, 907 S.W.2d 677, 682 (1995), *cert. denied*, 517 U.S. 1143 (1996). While statements that a venireperson can be fair can make the person an acceptable juror, they are "not an automatic cure-all." *Walton v. State*, 279 Ark. 193, 199, 650 S.W.2d 231, 234 (1983). Further, even if the trial court had abused its discretion, appellant failed to show prejudice, a prerequisite to a reversible-error claim. *See Williams v. State*, 327 Ark. 97, 103, 938 S.W.2d 547, 551 (1997). In light of the foregoing, we conclude that the trial court did not abuse its discretion in granting the State's challenge for cause.

## IV. Rule 4-3(h)

Pursuant to Ark. Sup. Ct. R. 4-3(h) (1999), the record has been reviewed for adverse rulings objected to by the appellant but not argued on appeal, and no reversible errors were found. Accordingly, we affirm appellant's judgment of conviction.