Corey SANDERS *v.* STATE of Arkansas

CR 99-628                                          8 S.W.3d 520

Supreme Court of Arkansas
Opinion delivered January 20, 2000

*Walker & Dunklin,* by: *Larry G. Dunklin* and *Bowden & Kendel,* by: *David O. Bowden,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Michael C. Angel,* Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Corey Sanders appeals his conviction for two counts of capital murder and sentence of life in prison from the Columbia County Circuit Court. Sanders raises two points on appeal: his challenge to the sufficiency of the evidence, and his contention that the trial court erred in admitting photographs of the victims' partially decomposed bodies, on the grounds that they were more prejudicial than probative. After a thorough review of the record, we find no error and affirm.

## I. Facts

The Columbia County Sheriff's Office commenced an investigation into the disappearances of Lamarcio Lamont Griffin and

Arthur Blackmon. Pursuant to that investigation, the sheriff's department located the bloody registration papers of a car belonging to Omar Muqtasid at a house where the victims were last seen. Subsequently, officers learned that the bodies of the victims could be found at the old Dockery Place in McNeil. A trail of blood led officers to a well, where the bodies of the two victims were discovered. The medical examiner ruled that Griffin died as a result of two gunshot wounds to the back and neck and Blackmon was killed when he was shot once in the area of the left eye. Three bullets were recovered from the victims, and a firearms expert confirmed that all of the bullets were fired from the same gun, a .38 caliber handgun. Muqtasid's car was discovered, completely burned, in Free Hope, about eighteen miles from the house where the registration papers were found.

## II. Sufficiency of the Evidence

For his first point on appeal, appellant contends that the state failed to produce sufficient evidence to prove that he committed the crimes in question beyond a reasonable doubt and that it was error for the trial court to have denied his motions for a directed verdict. We consider sufficiency of the evidence before addressing other alleged trial errors. *King v. State*, 338 Ark. 591, 999 S.W.2d 192 (1999). Appellant urges on appeal that there was little evidence connecting him with the death of Lamont Griffin and no evidence connecting him with the death of Arthur Blackmon, and that, as to either victim, there was no evidence of the requisite mental state or other elements of capital murder. At trial, appellant moved for a directed verdict at the close of the State's case and argued that the circumstantial evidence introduced by the State was not sufficient to overcome every other reasonable hypothesis consistent with innocence. After the State presented its case, appellant rested, offering no witnesses, and renewed his directed-verdict motion.

On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). Substantial evidence is that which is of sufficient force and character that it will, with reasona-

ble certainty, compel a conclusion one way or the other, without mere speculation or conjecture. The evidence may be either direct or circumstantial. Only evidence supporting the verdict will be considered. Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every hypothesis is left to the jury to decide. *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). Guilt may be proved in the absence of eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999).

Pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997), a person commits capital murder if "with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person." *Id.* The evidence presented by the State revealed that three witnesses heard Sanders confess to killing Lamont Griffin; one of those witnesses added that Sanders admitted to also killing Arthur Blackmon. Additional testimony provided evidence that Sanders owed Griffin money from a drug deal, thereby establishing a possible motive for the killing, and that appellant had been overheard discussing murdering Griffin with a co-defendant so that Sanders would not have to repay the money.

The State also produced substantial circumstantial evidence of appellant's guilt. The two victims were known to have been driving the car belonging to Muqtasid, and were seen in the company of Sanders in the car on the night the victims disappeared. Sanders was seen the next day in bloodstained clothing, and then asked a friend to get some gasoline for him. Sanders, driving a car matching the description of Muqtasid's burned Oldsmobile, had a friend follow him with the gas to a rural area outside Free Hope. The friends in question next saw flames from the area where Sanders had gone. Sanders got in the second car with his friends and returned to McNeil, telling his companions, "If I go down, we all go down."

Another witness, who testified that Sanders had asked him to drive the car to Chicago, reported seeing blood on the front seat of the car and said that Sanders told him he had shot Griffin and would dump the "bodies" somewhere they could not be found, such as a well. This witness had also previously seen Sanders in possession of a .38 caliber pistol. Sanders's grandmother admitted

that her grandson had lived with her at the old Dockery place and was familiar with the well where the bodies were found.

■ The trier of fact is free to believe all or part of a witness's testimony. Moreover, the credibility of witnesses is an issue for the jury and not for this court. *Bangs, supra.* Here, appellant argues that the evidence was insufficient to establish that he acted with pre-meditated and deliberate purpose in killing the victims, the required *mens rea* of capital murder. The jury declined to accept this possibil-ity. The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684 (1999).

■ Premeditation is not required to exist for a particular length of time. It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Bangs, supra.* Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Id.*

Here, the evidence established not only that Sanders had every opportunity and motive to kill the victims, but also then destroyed evidence relating to their disappearance. Once the jury was con-vinced that appellant was responsible for the deaths, they then must determine whether the *mens rea* suggested by the details of the killings satisfied the requirements of premeditated and deliberate purpose. Griffin and Blackman were shot in the back and in the eye with the same gun. Their bodies were wracked with the force of the gunshots and the medical examiner's testimony supported the severity of their wounds. Their bodies were then dumped in a well. These details and actions supported the jury's determination that premeditation and deliberation were proven.

■ ■ The court properly submitted the above evidence to the jury. When viewed in a light most favorable to the State, the evidence could be properly connected and did not leave the jury to speculation or conjecture. When circumstantial evidence rises above suspicion and is properly connected, and when, viewing that evidence in the light most favorable to the State, the jury is not left to speculation and conjecture alone in arriving at its conclusions, it

is basically a question for the jury to determine whether the evidence excludes every other reasonable hypothesis. *McDole, supra*. It is only every other reasonable hypothesis, not every hypothesis, that must be excluded by the evidence. *Id.* The jury certainly should test the reasonableness of any other hypothesis. In the instant case, substantial evidence supported the jury's verdict.

### III. Photographs of the Victims

For his second point on appeal, appellant contends that the trial court erred in admitting three photographs of the bloated, decaying corpses of the victims pulled from the well. Appellant argues that they were not probative of any significant issue in the case, and, even if probative, their potential for unfair prejudice outweighed the probative value.

■ We have often stated that the admission and relevancy of photographs is a matter within the sound discretion of the trial court. Although highly deferential to the trial court's discretion in these matters, this court has rejected a *carte blanche* approach to admission of photographs. We have cautioned against "promoting a general rule of admissibility that essentially allows automatic acceptance of all photographs of the victim and crime scene the prosecution can offer." *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997). This court rejects the admission of inflammatory pictures where claims of relevance are tenuous and prejudice is great, and expects the trial court to carefully weigh the probative value of photographs against their prejudicial nature. We require the trial court to first consider whether such evidence, although relevant, creates a danger of unfair prejudice, and then to determine whether the danger of unfair prejudice substantially outweighs its probative value. *Id.* Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403; *Camargo, supra*.

■ Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location

of the injuries, and the position in which the bodies were discovered. Of course, if a photograph serves no valid purpose and could only be used to inflame the jury's passions, it should be excluded. *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684 (1999); *Camargo, supra.*

■ An essential element of these crimes was the degree of intent; to secure a conviction for capital murder, the State had to prove that appellant caused the victims' deaths "with [a] premeditated and deliberated purpose." Ark. Code Ann. § 5-10-101(1)(4). We have held that the nature and extent of a victim's wounds is relevant to a showing of intent, which may be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the wounds. *Camargo, supra.* In *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995), we pointed out that upon considering evidence of multiple wounds, the "jury could have easily inferred that appellant fired multiple shots into both victims in a premeditated and deliberated manner." *Id.*

■ ■ The photographs were evidence of Sanders's intent because they depicted the nature, extent, and location of the wounds that he inflicted upon the victims, and they corroborated the testimony of the medical examiner by depicting the wounds he found in conducting the autopsies. Further, the decay and decomposition of the bodies explained in part the medical examiner's inability to determine from what range the victims had been shot. In this manner, they also enabled the medical examiner to testify more effectively and the jury to better understand his testimony. The pictures helped the jury to understand the testimony about where and in what condition the bodies were found. *See Camargo, supra.* Although the photos were graphic and gruesome, they depicted locations and types of wounds and the location of the bodies; they corroborated the testimony of witnesses who claimed to have heard Sanders discuss hiding bodies in a well, and they tended to prove appellant's purposeful intent, an element of the crime. *See Baker v. State*, 324 Ark. 330, 974 S.W.2d 474 (1998). Sanders further contends on appeal that, because the cause of death was undisputed, the photos were essentially cumulative or irrelevant. However, he did not stipulate to this fact at trial, and, even if he had done so, a defendant cannot prevent the admission of a photograph by conceding the facts portrayed therein. *Baker, supra.* We cannot say, under these circumstances, that the photographs'

prejudicial effects outweighed their probative value, and affirm on this point as well.

### IV. 4-3(h) Review

In accordance with Ark. Sup. Ct. R. 4-3(h)(1999), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.