Roger Dale BARRETT *v.* STATE of Arkansas

CR 02-584 119 S.W.3d 485

Supreme Court of Arkansas
Opinion delivered September 25, 2003

*J. Eric Hagler,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Roger Dale Barrett was convicted of capital murder and sentenced to life in prison without the possibility of parole. Barrett now appeals and argues five points for reversal. Specifically, he contends that: (1) there was insufficient evidence upon which to base a conviction for the offense of capital murder; (2) the trial court erred in admitting a certain firearm and ammunition into evidence; (3) the trial court erred in admitting evidence of appellant's prior alcohol use and subsequent drug use; (4) the trial court erred in admitting evidence of appellant's prior acts of violence towards the victim; and, (5) the trial court erred in admitting confidential communications between appellant and his wife. We find no reversible error and affirm the judgment of conviction.

While married to Nola Barrett, appellant had been engaged in an extramartial affair with Eunice "Yogi" Bradley for approximately two years. On August 21, 2000, at about 9:00 p.m., Yogi was in a single-vehicle accident as a result of high-centering her car on the lip of a ditch in front of a residential home. Yogi had been drinking, and after safely getting out of the car, she asked a local resident to give her a ride to the Barrett residence.

When she arrived at appellant's home, Nola answered the door. Yogi asked Nola for a ride to her camper-home. At first Nola refused to take Yogi home, so Yogi went to the backyard and climbed into appellant's tow truck. Eventually, Nola changed her mind and took Yogi home. In investigating the car accident, Constable A.L. Hollingsworth went to the Barrett residence

looking for Yogi. Nola answered the door and explained that Yogi was at her camper-home. At approximately 12:00 a.m. on August 22, Constable Hollingsworth went to Yogi's camper-home and talked with her.

Meanwhile, Nola called her friend, Deborah Steenblock, and asked her to come over and visit. Steenblock and her two children went to visit Nola and stayed at the house until appellant returned home at midnight carrying a partially consumed bottle of tequila. Steenblock and her children left shortly thereafter.

It was at this point that Yogi arrived back at the Barrett residence riding a horse. Yogi was upset that Nola had told the police about her showing up at the house drunk on the previous evening. Appellant took sides with Yogi, and the two struck up a friendly conversation. Nola became afraid that her husband and Yogi were going to rekindle their loving relationship. She decided that she wanted to leave, and at about 1:30 a.m., called the Steenblocks again to ask if she could stay the night at their house. When Deborah Steenblock's daughter, Ashley, arrived to pick Nola up and take her back to their house, Nola was hiding in a ditch along the road leading to the Barrett residence. That same morning at about 8:00 a.m., appellant went over to the Steenblock household looking for Nola. He went inside and told Steenblock that he had accidentally shot Yogi. Steenblock suggested that he take her to Yogi because she knew CPR and might be able to save her. Appellant replied that Yogi was already dead. He then took both Nola and Steenblock back to the house where Yogi had been shot.

When they arrived, Yogi was lying dead on the living room couch, slightly slumped over, with a gunshot wound to her chest. Appellant stripped the covers off the sofa cushions and put them in the wash. Then, he took Steenblock back to her house. On the way, appellant appeared to throw something over the roof of his van and into the adjacent brush. Later during the drive, he pulled over to the side of the road beside a pond and got out of the van. According to Steenblock, "he said that's where he tossed the pistol." Subsequently, appellant took Yogi's body out into a field and set it on fire. He later met some friends back at his house where they all smoked marijuana.

The fire spread from Yogi's body, culminating in a three-acre grass fire. The local fire department was notified and responded. The discovery of the body led to an investigation by the

Benton County Sheriff's Office. Investigators determined that the fire originated at the body. When appellant was questioned to determine whether he knew anything about Yogi's disappearance or death, he told the investigator the last time he had seen her was at 6:00 p.m. on August 21, 2000. After further investigation, appellant was arrested and charged with capital murder in the death of Eunice "Yogi" Bradley. He was found guilty of capital murder and sentenced to life in prison without the possibility of parole. It is from this capital-murder conviction that appellant now appeals.

## Sufficiency of the Evidence

Appellant first argues that there was insufficient evidence to support a conviction for the offense of capital murder. His specific contention is that the evidence elicited at trial was insufficient to show that he acted with premeditated or deliberated purpose in killing Yogi. We note that appellant properly preserved a challenge to the sufficiency of the evidence on appeal by moving for a directed verdict at the close of the State's case and again at the close of all the evidence. *See* Ark. R. Crim. P. 33.1 (2003).

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.* Moreover, the credibility of witnesses is an issue for the jury and not for this court. *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 395 (2000). The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Cobb v. State, supra.* Additionally, a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001); *Goff v. State,* 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993).

In Arkansas, a person commits capital murder if "[w]ith premeditated and deliberate purpose of causing the death of another person, he causes the death of any person." Ark. Code

Ann. § 5-10-101(a)(4) (Repl. 1997). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Leaks v. State,* 345 Ark. 182, 45 S.W.3d 363 (2001). The premeditation necessary to be convicted of capital murder in Arkansas need not exist for a particular length of time. *Sanders v. State,* 340 Ark. 163, 8 S.W.3d 520 (2000). Indeed, premeditation may be formed in an instant and is rarely capable of proof by direct evidence, but must usually be inferred from the circumstances of the crime. *Id.* Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Id.*

Contrary to appellant's assertion, there is sufficient evidence of premeditation and deliberation. Dr. Frank Peretti, a forensic pathologist with the Arkansas State Crime Laboratory, performed the autopsy on Yogi. When he received the body, it was almost completely charred except for a part of Yogi's forehead and the bridge of her nose. He observed one contusion on her forehead and another large contusion behind her ear. There was a 1/4 inch scrape on her nose. Dr. Peretti found a .22 caliber bullet that punctured through Yogi's lung, and he ascertained that it entered from the front of her chest and in a downward direction. Dr. Peretti determined that Yogi died as a result of a gunshot wound to the chest with blunt force head trauma. He also opined that after the gunshot, Yogi could have been alive for five to ten minutes.

Chief Scott Van Hook of the Highfill Volunteer Fire Department discovered Yogi's body when he was responding to the grass fire. Chief Van Hook opined that the burning body was the ignition source for the fire. David Dwight, an arson investigator with the Benton County Sheriff's Office, agreed with Van Hook's assessment but added that the body was ignited with an unknown accelerant.

In this case, the State presented evidence that appellant tried to conceal Yogi's death from the authorities. He told Mike Sydoriak, an investigator with the Benton County Sheriff's Office, that he had last seen Yogi on August 21, 2000, at 6 p.m. when she came to his house for gas money. Appellant went to great lengths to cover up the crime. He washed the soiled sofa cushions, cleaned the inside of his van, and attempted to dispose of Yogi's body by burning it in a field. He also successfully concealed the murder

weapon. Although Deborah Steenblock testified at trial that appellant told her he "tossed" the pistol into a nearby pond, the murder weapon was never found. Investigators did, however, find a hair in the back open section of appellant's van that was matched through DNA to the victim.

Other evidence also linked appellant to the murder. Ashley Steenblock testified that on the night of the murder, when Nola called after midnight, she heard a lot of commotion that sounded like an argument in the background. The following day, appellant told Nola and Steenblock that he had accidentally shot Yogi. He also told a friend, Marvin Wise, that he accidentally shot Yogi when he tripped over a coffee table. Additionally, Shannon Long testified that she overheard appellant say he shot Yogi. Both Steenblock and Nola witnessed Yogi's dead body on the couch at the Barrett residence. The evidence also demonstrates that appellant acted in concert with Nola to clean up the couch where Yogi had been shot. Valery Stout testified that on August 22, 2000, at about 7:15 a.m., she saw appellant driving his van near the area where Yogi's burned body was found. In addition, Yogi's daughter testified that appellant once struck her mother in the face with enough force to cause severe bruising and swelling on the side of her head.

The evidence is uncontradicted that appellant was the last person to be with Yogi and see her alive. Yogi was killed with a gun by a single shot to the chest. She also sustained blunt-force trauma to the head contemporaneous with the shooting. Furthermore, as we have already noted, appellant went to great lengths to conceal the murder. Efforts to conceal a crime, as well as lying to friends and police about one's involvement in a killing, can be considered as evidence of consciousness of guilt. *Leaks v. State,* 345 Ark. 182, 45 S.W.3d 363 (2001). In the instant case, considering the proof as to the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and appellant's conduct, we must conclude that there was sufficient evidence to support the capital-murder conviction. Accordingly, the circuit court did not err in denying the motions for directed verdict.

### Relevance of Firearm and Ammunition

Prior to trial the State entered into a stipulation whereby it agreed that no reference to a certain .22 caliber revolver would be made at trial. The State did not mention the revolver; however, it did offer into evidence a .22 caliber pistol, a .22 caliber rifle, and some .22 caliber ammunition, albeit over appellant's objection. On appeal, appellant makes a two-prong argument. First, he contends that under Ark. R. Evid. 402, the .22 caliber rifle and the .22 caliber ammunition seized from his house were irrelevant to the crime of capital murder. Second, appellant cites Ark. R. Evid. 403 in support of his claim that the evidence should have been excluded. The State maintains that the rifle was relevant to show that appellant actively covered up the murder. Essentially, the State contends that because investigators were unable to find the actual murder weapon in appellant's house, the fact that they were able to find other .22 caliber weapons goes to show that appellant was attempting to conceal evidence of the crime.

 Rule 401 of the Arkansas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2003). Rule 402 states that "[e]vidence which is not relevant is not admissible." Ark. R. Evid. 402 (2003). A trial court's ruling on relevancy will not be disturbed absent an abuse of discretion. *Echols v. State,* 326 Ark. 917, 936 S.W.2d 509 (1996). For evidence to be relevant, it is not required that the evidence prove the entire case; rather, all that is required is that it have "any tendency" to make any fact that is of consequence to the determination of the action more or less probable. *Id.*

 The test of admissibility of evidence over an objection for irrelevancy is whether the fact offered into proof affords a basis for rational inference of the fact to be proved. *Grigsby v. State,* 260 Ark. 499, 542 S.W.2d 275 (1976). It is sufficient if the fact may become relevant in connection with other facts, or if it forms a link in the chain of evidence necessary to support a party's contention. *Id.*

 The State contends that the relevancy of the .22 caliber rifle is tied to the issue of whether appellant attempted to cover up the murder. The State's theory was that appellant

disposed of the .22 caliber murder weapon in an attempt to cover up his crime. We disagree. The admission of the .22 caliber rifle found at appellant's home does not provide a basis to rationally infer that he disposed of the actual murder weapon. The State suggests that in order to prove a cover up it is relevant to focus on what was not found at the murder location. We agree that the State properly introduced evidence that the police searched the house and were unable to find the murder weapon. To prove that their investigation was thorough, the State introduced without objection the testimony of Ronald Andrejack, a firearms examiner with the Arkansas State Crime Laboratory. Andrejack testified that neither the .22 caliber rifle nor the .22 caliber pistol found at the home fired the bullet found in Yogi's body. While it is true that investigators were unable to locate the .22 caliber revolver that appellant used to shoot Yogi, the .22 caliber rifle formed no link in the chain of evidence necessary to support the State's cover-up theory. *See Grigsby v. State, supra*. Accordingly, the circuit court erred in admitting the .22 caliber rifle.

 Even when a trial court errs in admitting evidence, we have held that when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm the conviction. *See Cobb v. State*, 340 Ark. 240, 12 S.W.3d 395 (2000) (holding any error in admitting allegedly irrelevant testimony that the defendant loved music was harmless in capital murder prosecution where the defendant admitted killing the victim and evidence supported the conviction). To determine if the error is slight, we can look to see if the defendant was prejudiced. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988) (holding the fact that defendant passed the time watching sex and horror movies was irrelevant, but the error was harmless as the prejudicial effect was minimal and the evidence of guilt so overwhelming).

 We have already concluded that there was sufficient evidence to support a capital-murder conviction. Appellant was the last person seen with Yogi alive. She was shot in his home. According to the medical examiner, she died as a result of a gunshot wound to the chest with blunt force head trauma. Appellant was seen near the location where Yogi's body had been abandoned and burned shortly before the fire department discovered her remains. Lastly, appellant admitted to killing Yogi. Thus,

in this case, where appellant has admitted to killing the victim and it has been established by sufficient evidence that he acted with premeditation and deliberation, any prejudice that may have resulted from admitting the .22 caliber rifle was minimal. *See, e.g., Cobb v. State, supra.* Furthermore, the firearms examiner was permitted to testify without objection that neither the .22 caliber rifle nor the .22 caliber pistol found at the home fired the bullet found in Yogi's body. The jury was therefore sufficiently alerted to the fact that the .22 caliber rifle was not the murder weapon. Under these circumstances, we conclude that the trial court's error in admitting the .22 caliber rifle was slight.

In short, any prejudice resulting from the trial court's error was minimal and, in light of the above noted testimony by the firearms examiner, the error was slight. In other words, the evidence of appellant's guilt is overwhelming, and the error is slight. We therefore declare that the circuit court's error in admitting the .22 caliber rifle was harmless.

Appellant also attacks the admission of the .22 caliber rifle by arguing that Rule 403 should have operated to exclude the evidence. However, the record reflects that appellant failed to make a Rule 403 argument at trial; instead, he hinged his entire argument to the circuit court on the relevancy of the evidence. This court does not address arguments made for the first time on appeal. *Elser v. State*, 353 Ark. 143, 114 S.W.3d 168 (2003).

In his last argument under this point, appellant maintains that the introduction of the .22 caliber ammunition seized from his house was irrelevant. We disagree. It is undisputed that Yogi was shot with a .22 caliber bullet. As such, the fact that appellant owned .22 caliber ammunition would help prove that he possessed the means to kill Yogi. We affirm the circuit court's ruling on the admissibility of the ammunition.

### Admission of Prior Drug and Alcohol Use

For his third assignment of error, appellant asserts that the trial court erred in admitting evidence of his prior alcohol use and subsequent drug use. Prior to trial, the circuit court granted the State's motion in limine under Ark. R. Evid. 404 seeking the admissibility of certain testimony regarding appellant's prior use of

alcohol, subsequent use of marijuana, and the fact that appellant was under the influence of methamphetamine on the day prior to the murder.

 A circuit court's ruling on the admissibility of evidence under Rule 404 will not be reversed absent a manifest abuse of discretion. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). Arkansas Rule of Evidence 404(b) states:

> (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2003). In *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997), this court described the application of Rule 404:

> [U]nder this rule, evidence of other crimes, wrongs, or acts may be admissible to prove motive. We have said that, when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). The State is entitled to produce evidence showing circumstances which explain the act, show a motive for killing, or illustrate the accused's state of mind. *Echols v. State, supra; Smith v. State*, 310 Ark. 247, 837 S.W.2d 279 (1992).

*Lee* at 702, 942 S.W.2d at 235-236. In *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000), we held that evidence of drug use and drug dealing was clearly part of the *res gestae* of the crime where it was intermingled and contemporaneous with the commission of the crimes charged.

At trial, Ed Easley testified about appellant's physical state on the afternoon of August 21, only hours before Yogi's death. Easley testified that in the past he and appellant had used drugs together, including methamphetamine and marijuana. Easley stated that he had a brief conversation with appellant after work around 2:00 p.m. Easley spoke with appellant for five minutes and, during that

time, noticed that appellant appeared extremely tired to the point that Easley recommended that he "needed sleep and rest for his own welfare."

Valery Stout testified that she smoked marijuana with appellant and Nola on the morning of Tuesday, August 22, 2000, when Yogi's body was discovered in the field. This testimony was evidence of appellant's state of mind immediately following the removal of the victim's body from the premises. Marvin Wise also testified that when he went to visit appellant in jail, appellant admitted that he accidentally shot the victim because he was "cranked up" and "doped up."

The evidence was not offered to show that appellant acted in conformity therewith; instead, it was offered to show his mental state in connection with the murder. In addition, as we held in *Gaines v. State, supra,* drug and alcohol use can be considered part of the *res gestae,* and, therefore, is not rendered inadmissible by Rule 404. We conclude that the circuit court did not abuse its discretion in allowing this testimony into evidence at trial.

### Prior Acts of Violence Towards the Victim

For his fourth point on appeal, appellant claims the trial court erred in admitting evidence that on a previous occasion he physically abused Yogi. In a motion in limine filed prior to trial, the State argued that the testimony was admissible as proof of appellant's state of mind under Rule 404(b) and as a present sense impression, a then-existing physical condition, or an excited utterance pursuant to Ark. R. Evid. 803. Appellant countered by pointing out that the evidence was not subject to the hearsay exceptions in Rule 803, and, furthermore, that the evidence should be excluded under Rules 402 and 403. At a pretrial hearing on the matter, the trial court stated that the challenged evidence would be admitted if the State laid a proper foundation. The trial court reminded counsel that a record needed to be made at trial.

At trial, the testimony was proffered and admitted over appellant's objection. Yogi's daughter testified that about a year and half before Yogi's death, she was unable to find her mother after her mother and appellant got into an argument. She found a note written by Yogi and then searched for her. She testified that

when she found her mother, she noticed a bruise on the side of her head. Yogi then proceeded to tell her daughter that appellant had hit her.

*A. Rule 803*

▮ Trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Smith v. State,* 351 Ark. 468, 95 S.W.3d 801 (2003). In order for the evidence to be excluded as hearsay, it must be a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. Rule Evid. 801(c) (2003). In this case, as proof that appellant deliberately hit Yogi on the day of the murder, the State presented her daughter's testimony about a prior occasion when Yogi made a statement that appellant had hit her in the head. This out-of-court statement was clearly hearsay.

▮ While evidence may be considered hearsay under Rule 801(c), Rule 803 provides numerous exceptions to the hearsay rule. Under Rule 803(1), "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is excluded from the hearsay rule as a present sense impression. Ark. R. Evid. 803(1) (2003). The hearsay statement at issue — "Appellant had [hit me]" — does not come within the present-sense-impression exception. That exception is not applicable where the statement is given some time after the event, and not while the event occurred or immediately thereafter. *See Halfacre v. State,* 292 Ark. 331, 731 S.W.2d 179 (1987).

▮ A second exception to the hearsay rule is Rule 803(3):

> A statement is excluded from the hearsay rule if it is a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Ark. R. Evid. 803(3) (2003). Once again, this section is not applicable. The hearsay at issue was not a statement of the declarant's then existing state of mind, emotion, or physical condition.

 A statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is also excluded from the hearsay rule as an excited utterance. Ark. R. Evid. 803(2) (2003). Factors to consider when determining if a statement falls under the excited-utterance exception to the hearsay rule are: (1) the lapse of time, (2) the age of the declarant, (3) the physical and mental condition of the declarant, (4) the characteristics of the event, and (5) the subject matter of the statement. *Peterson v. State*, 349 Ark. 195, 76 S.W.3d 845 (2002). Additionally, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation. *Flores v. State,* 348 Ark. 28, 69 S.W.3d 864 (2002).

We analyzed a similar factual scenario in *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000). There, Fudge was convicted of capital murder for the death of his wife, Kimberly Fudge. On appeal, he argued that the trial court had improperly admitted hearsay evidence. *Id.* The challenged evidence was testimony by two witnesses who stated Kimberly told them that Fudge had beaten her, choked her, and forced her to have sex. *Id.* She made these statements to the witnesses "anywhere from one to several hours" after the events occurred. *Id.* One of the witnesses testified that Kimberly appeared nervous and scared while making the statements. The trial court admitted the testimony pursuant to Rule 803(2), and we held that the trial court did not abuse its discretion. *Id.*

 In the instant case, the testimony reveals that at the time Yogi made the statement to her daughter, she was crying and drinking. Moreover, she appeared very upset, and she had a bruise on the side of her head that was "swollen very bad." Under these circumstances, as in *Fudge v. State,* we cannot say that the lower court abused its discretion in allowing similar evidence of prior violence at the hands of appellant.

*B. Rule 404(b)*

Appellant also argues that the evidence should have been excluded under Ark. R. Evid. 404(b). Additionally, he contends that because the prior incident occurred several months before Yogi's death, it was irrelevant and in violation of Rule 403. Once again, a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003).

 With respect to Rule 404(b), we believe the case of *Russey v. State*, 322 Ark. 786, 912 S.W.2d 420 (1995), to be particularly instructive. In that case the defendant was charged with murdering his wife by shooting her with a shotgun. *Id.* This court allowed testimony that five weeks prior to his wife's death, the police were summoned to investigate a domestic violence incident between the defendant and his wife involving the same shotgun. *Id.* We held that while evidence demonstrating mere character is prohibited, Rule 404(b) allows evidence that is probative of other purposes, including intent or the absence of mistake or accident. *Id.* Likewise, this case involves a prior incident that was substantially similar to the cause of Yogi's death, and probative to show intent or the absence of mistake or accident.

 This court has further made it clear that if the introduction of testimony of other crimes, wrongs, or acts is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801(2003). Thus, if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred, and is not introduced merely to prove bad character, it will not be excluded. *Id.* Stated another way, the test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance. *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000); *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000); *see also Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002) (prior bad acts independently relevant to prove motive in not contacting police); *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001) (prior crime independently relevant as proof of intent to commit charged offenses); *Eliott v. State*, 342 Ark. 237, 27

S.W.3d 432 (2000) (escape conviction was not used to show appellant's character, but was independently relevant to show his consciousness of guilt of the rape offenses).

Here, the State proffered evidence that Yogi had told others about appellant causing a bruise and swelling to her face during a quarrel. As noted earlier, Yogi's daughter testified that approximately a year and a half before Yogi's murder, she saw her mother with a bruise and swelling on the side of her head. At the time, Yogi appeared upset and said that appellant had caused the bruise. At trial, the State was prepared to offer the testimony of Pam Easley to corroborate this account of Yogi's earlier injury and that appellant admitted to Easley he caused that injury. The trial court, however, excluded Easley's testimony on the ground that it was cumulative.

Given the fact that Yogi sustained injuries during her murder that were similar to those she had previously suffered at the hands of appellant, it was well within the discretion of the trial court to allow the evidence of appellant's prior acts of violence. Although the injuries inflicted by appellant occurred approximately a year and a half prior to Yogi's death, the injuries were consistent with those she suffered contemporaneously with the gunshot wound to her chest that appellant claimed was accidental. We therefore affirm the circuit court's ruling on this point.

### Husband-Wife Privilege

For his final point on appeal, appellant contends that the trial court erred in admitting confidential information between him and his wife. In a pretrial motion, appellant submitted that statements made by appellant to his wife Nola were privileged pursuant to Ark. R. Evid. 504. The State argued that because the statements were made in the presence of third parties, they were admissible under Ark. R. Evid. 510. The general rule is set forth in subsection (b) of Rule 504 wherein it states "[a]n accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse." Ark. R. Evid. 504(b) (2003). Under this Rule, however, spousal communication is privileged only if it is not intended to be disclosed to any other person. *David v. State,* 286 Ark. 205, 691 S.W.2d 133 (1985); *Roleson v. State,* 277 Ark. 148, 640 S.W.2d 113 (1982). Moreover, Ark. R. Evid. 510

provides that if the same information protected by the husband-wife privilege is disclosed to a third person, the privilege is waived. Ark. R. Evid. 510 (2003); *see, e.g., Dansby v. State,* 338 Ark. 697, 1 S.W.3d 403 (1999); *Halfacre v. State,* 292 Ark. 331, 731 S.W.2d 179 (1987).

■ In this case, appellant sought to keep his wife from testifying that he admitted to accidentally shooting Yogi. Other witnesses testified that appellant told them the same information. In fact, appellant's wife stated she specifically heard him tell Steenblock that he shot Yogi. Thus, appellant's argument is not supported by Ark. R. Evid. 510, which plainly states that the communication of any significant part of the privileged matter to someone other than the spouse effectively waives the privilege. *Dansby, supra.* The rule grants no exceptions or qualifications other than when the disclosure is itself privileged, such as a disclosure covered by lawyer-client privilege. *Dansby, supra.* Furthermore, Rule 510 does not state that the waiver depends upon the disclosure being heard by a number of people; nor does it state that the waiver depends upon the third party's testimony being undisputed. *Dansby, supra.* Here, the State introduced evidence that there had been a waiver of the privilege. As such, we cannot conclude that the trial court erred.

### 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Doss v. State,* 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.

ARNOLD, C.J., and THORNTON, J., dissent.

W.H. "DUB" ARNOLD, Chief Justice, dissenting. I respectfully disagree that the .22 caliber pistol, the .22 caliber rifle, or the .22 caliber ammunition admitted at trial was relevant evidence. For that reason, I would not affirm this case but, instead, would reverse and remand for a new trial.

The majority opinion acknowledges that, prior to trial, the State entered into a stipulation whereby it agreed that no reference to a certain .22 caliber revolver would be made at trial. While it is true the State made no reference to that particular .22 caliber revolver, the State did introduce other irrelevant firearm evidence, namely the .22 caliber pistol, the .22 caliber rifle, and the .22 caliber ammunition.

We know from the testimony of Ronald Andrejack, a firearms and tool mark examiner with the Arkansas Crime Laboratory, that he received a bullet recovered from the body of the victim and was asked to compare that bullet with the bullet fired from a certain .22 caliber pistol and a certain .22 rifle that was recovered from appellant's home. Andrejack testified at trial, "As a result of microscopic examination, I was able to eliminate the rifle and the pistol as having fired the bullet I received from the medical examiner. *Neither of theses weapons fired the bullet.*" (Emphasis added.)

Even though the State knew before the trial began that neither the .22 pistol nor the .22 rifle could be linked to the murder, the State offered both into evidence plus certain .22 caliber ammunition that could not be linked to the murder. Appellant's objection to the irrelevant evidence was overruled by the trial court.

The State could have purchased any .22 pistol, any .22 rifle, and boxes of .22 caliber ammunition from Wal-Mart or any other store that sells guns and ammunition and introduced those weapons as they moved to introduce, in this case, and it would have had as much relevance as the .22 rifle and .22 caliber ammunition introduced in this trial.

It is interesting to note that the majority recognizes that the .22 rifle introduced at trial had no link in the chain of evidence necessary to support the State's cover-up theory. The majority opinion recognizes that the trial court erred in admitting the .22 rifle and the ammunition.

*Black's Law Dictionary* defines error as, "A mistaken judgment or incorrect belief as to the existence or effect of matters of fact, or a false or mistaken conception or application of the law. Such a mistaken or false conception or application of the law to the

facts of a cause as will furnish ground for a review of the proceedings upon a writ of error." *Black's Law Dictionary* 377 (6th ed. 1991).

In this case, there was no mistake or incorrect belief as to the facts or law. The trial court and the State knew that the .22 rifle, .22 pistol, and the .22 caliber ammunition could not in any way be linked to the bullet recovered from the victim. Therefore, this was no error but an intentional act by the State to introduce evidence that had no probative value and was further so prejudicial to appellant that the jury could not remove the importance from their minds.

The trial court's action in allowing the .22 rifle and the .22 caliber ammunition into evidence over appellant's objection was an abuse of discretion and the case must be reversed and remanded for a new trial.

THORNTON, J., joins in this dissent.